OSTER v. DEPARTMENT OF TREASURY ET AL.

[No. 27,646. Filed November 25, 1941. Rehearing denied December 29, 1941.]

314

*James W. Noel, Robert D. Armstrong, Hubert Hickam* and *Alan W. Boyd,* all of Indianapolis, for appellant.

*George N. Beamer,* Attorney General, *Omer S. Jackson,* Attorney General, *David I. Day, Byron B. Emswiller* and *Joseph P. McNamara,* Deputies Attorney General, for appellee.

RICHMAN, J.—Appellant rented and occupied a two-story brick factory building at Crawfordsville, Indiana, in which he had 117 sewing machines and also other machinery and manufacturing equipment. He employed from 150 to 160 operatives. Hirsch Brothers of Chicago furnished cloth in bolts to appellant who made it into ladies' coats. The "findings" were purchased by appellant. He did not buy the cloth nor sell the coats but

delivered them to Hirsch Brothers. Each season the parties agreed upon a price for making each specified garment. The items considered were the cost of findings, labor, repairs on machinery and building, etc., plus a profit for appellant. He made no garments for anyone other than Hirsch Brothers, all of whose sales were made to retail merchants. Appellant's only source of income was from the stipulated price per garment received from Hirsch Brothers, upon whom he drew from time to time in amounts of three to four thousand dollars.

From the time the Gross Income Tax law became effective, May 1, 1933, through the calendar year 1935, he made returns of such income and paid tax at the rate of $\frac{1}{4}$ of 1% thereof. Appellee department claimed that he should have paid 1% and assessed deficiency tax of the difference plus interest and penalties which appellant paid under protest. He brought this action to recover the deficiency assessment so paid.

The trial and Appellate Courts, evidently persuaded that they were bound by decisions of this court, held that the tax should have been computed at the higher rate and denied recovery. We think otherwise.

The Gross Income Tax Act of 1933 was amended in 1937 and in 1941. Section 3 as originally worded is § 64-2603, Burns' 1933, § 15983, Baldwin's 1934, and as it now stands has the same section number in Burns' 1933 (Supp.) and Baldwin's Supp. 1941. It is apparent from the latter that appellant's current income from such sources clearly is within subsection (a) (4), defined as "wholesale sales," and taxable at the lower rate. It is not clear that the lower rate was not also applicable prior to the first amendment in 1937.

We said recently with reference to another section of the Gross Income Tax Act of 1933 that "in case of doubt such statutes are to be construed more strongly against the state and in favor of the citizen." *Department of Treasury* v. *Muessel* (1941), 218 Ind. 250, 32 N. E. (2d) 596.

It has been held that an amendatory act sometimes furnishes aid to the court in explaining ambiguity in the act amended. *Yarlott* v. *Brown* (1923), 192 Ind. 648, 138 N. E. 17; *Taylor* v. *State ex rel.* (1907), 168 Ind. 294, 80 N. E. 849; *Hennessey* v. *Breed, Elliott & Harrison, Inc.* (1931), 92 Ind. App. 165, 176 N. E. 251; *Armstrong, Admr.* v. *State ex rel.* (1920), 72 Ind. App. 303, 120 N. E. 717; 25 R. C. L. Stat. § 288, p. 1064; *In Hurle's Case* (1914), 217 Mass. 223, 104 N. E. 336, Ann. Cas. 1915C 919, L. R. A. 1916A 279.

With these principles in mind we have examined the conflicting views presented herein. Appellant insists that its sole income was from the "business of manufacturing, compounding, or preparing for sale, profit or use, any article or articles, substance or substances, commodity or commodities" under clause (a) of § 64-2603, Burns' 1933, § 15983, Baldwin's 1934. Appellee claims that clause (f) applies, reading:

> "Upon the gross income of every person engaged in any business or activity not enumerated in subsections (a) to (e) inclusive, of this section, including, but not in limitation of the foregoing, the gross income from professional services, personal services, sales of real estate, all funds received for the performance of contracts, all funds from the investment of capital, and all receipts from any source whatsoever, one [1] per cent."

The words "services" and "performance of contracts" are stressed by appellee. But these terms are

ambiguous. If making garments for a wholesaler thereof be called a service, certainly it is not "professional," nor is it within the usual definition of "personal." The clause as it now stands has been relettered (g) and amended to read "professional services, personal services, or services of any character whatsoever," which indicates at least a legislative doubt as to the comprehensive character of the original use of the word "services." "Funds received for the performance of contracts" could include receipts from the performance of a contract for sale in wholesale lots, which obviously was not intended to be taxed at 1%. So these words as well as "services" require explanation. Considering clause (f) as a whole it is apparent that it was the "catch-all" clause designed to cover only receipts not taxable under one of the preceding clauses. The question then is resolved into an inquiry as to whether appellant's income was reasonably within the purview of clause (a).

In *Storen* v. *J. D. Adams Mfg. Co.* (1937), 212 Ind. 343, 348, 7 N. E. (2d) 941 (rev'd on other grounds, 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365), it was said that "the rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received." The court at the same time denied the manufacturer's contention therein that "sale is an indispensable incident to the business of manufacturing." It was not said and it is not true that there can be no income from manufacturing without a sale. A manufacturer may obtain income by a bailment for hire of his product. A bailment is not a sale. It is not seriously contended that the facts herein show a sale. But it cannot be disputed that appellant had an income and we think that income can reasonably be

ascribed to "the business of manufacturing." It is to be noted that "the business of manufacturing" is not by clause (a) limited to manufacturing "for sale" but may be for "profit or use." Appellant's operations were surely for profit and for use. So we think the income of appellant was fairly within the provisions of the clause.

Looking at the section as a whole we perceive the intent expressed in *Clark's L. & Dry C. Co.* v. *Dept. of Treasury* (1937), 103 Ind. App. 359, 363, 5 N. E. (2d) 683, as follows:

"The gross income that is to be taxed at one-fourth of one percent is income derived from business activities which result in making available for use in the first instance articles, substances, or commodities."

The higher rate applies to ultimate sales to the consumer. Generally a distinction is recognized between the manufacturer and wholesaler on the one hand and the retailer on the other. In the Adams case, *supra,* this was regarded as significant. We quote (p. 348):

"Some reason can be seen for taxing manufacturers, jobbers, and wholesalers at a lower rate, since their merchandise moves in larger quantities and in greater price competition, and since the articles manufactured and sold by them must be ultimately burdened with successive taxes."

The Legislature by the 1937 and 1941 amendments made it clear, as already established by the Adams case, *supra,* that the source of the income, not the general character of the taxpayer's business, determines the rate of his tax. It does not mention the manufacturer, jobber or wholesaler as such but it provides that the income which they get from what we have described as "wholesale" operations shall be known as "wholesale sales." We quote a part of the section:

"With respect to that part of the gross income of every person which is received from wholesale sales . . . the tax shall be equal to one-fourth ($\frac{1}{4}$) of one [1] per cent of such part of the gross income. The term 'wholesale sales' means and includes only the following: . . . " (Section 64-2603(a), Burns 1933 (Supp.), Section 15983(a), Baldwin's Supp. 1941.)

Then follow seven enumerations of operations most of which are actual sales to others than the ultimate consumer, but included is one, added in 1941 (and appellant's falls therein), which is not a sale at all:

"(4) receipts received from the business of industrial processing, enameling, plating or servicing of any tangible personal property which is to be sold by the person for whom such processing, enameling, plating or servicing is done, either as a complete article or incorporated as a material, or as an integral or component part of tangible property produced for sale by such person in the business of manufacturing, assembling, constructing, refining or processing; . . . "

Clause (4) was added in 1941 and is the only change in subsection (a) from the wording of the 1937 amendatory act. In the meanwhile the case of *Ingram-Richardson Mfg. Co.* v. *Department of Treasury* (1940), (C. C. A. 7th), 114 F. (2d) 889, had been decided under the 1937 act. That case held that the servicing by enameling stove and refrigerator parts belonging to the taxpayer's customers was not a sale so as to come within clause 3(a) of the 1937 act but, as the title did not pass, was a bailment and that the 1% tax applied under the "catch-all" clause of 1937, now (g), which then read "gross income from professional services, personal services, or services of any character whatsoever." While the 1941 amendment may have been made to obviate the effect of this decision and without such amendment appellant's operations might be taxable at 1% under the

1937 act, the fact remains that as it now stands the act expresses clearly the intent that such operations are taxable at the lower rate. This we think was the intent of the original act, perhaps read out of the act in 1937 but restored in 1941.

We find nothing in *Department of Treasury* v. *Ridgely, Executrix* (1937), 211 Ind. 9, 4 N. E. (2d) 557; *Indiana Creosoting Co.* v. *McNutt, Governor* (1936), 210 Ind. 656, 5 N. E. (2d) 310, or other cases, cited conflicting with our views. The last case above mentioned is relied upon by both parties which itself is an indication that it does not clarify the issue here presented.

If appellant's case is not clearly within the provisions of 3(a) of the original act, that clause must be considered so ambiguous as to justify resolving the doubt in favor of the taxpayer resulting in a conclusion harmonious with the latest expression of legislative intent.

The judgment is reversed. Inasmuch as practically all the facts were stipulated there is no occasion for another trial. The lower court is therefore directed to enter judgment for appellant for an amount which shall include the deficiency tax and interest thereon from the date of payment thereof, and for costs.

FANSLER and ROLL, JJ., dissent.

NOTE.—Reported in 37 N. E. (2d) 528.