STATE OF INDIANA, STATE OF INDIANA DEPARTMENT OF REVENUE *v.* APEX STEEL AND SUPPLY COMPANY, INC.

[No. 3-775A153. Filed April 20, 1978. Rehearing denied May 31, 1978. Transfer denied August 15, 1978.]

*Theodore L. Sendak*, Attorney General of Indiana, *James M. Garrettson*, Deputy Attorney General, for appellants.

*Julius H. Sachs, Robert M. Hess, Sachs and Hess*, of Hammond, for appellee.

GARRARD, J. — Apex sued for a refund of gross income taxes asserting it was erroneously taxed at the 2% rate rather than the ½% rate. The trial court found for the taxpayer and the state appeals. We affirm.

The essential facts were stipulated. At issue is the interpretation of IC 6-2-1-3, and in particular subparagraphs (a)(4) and (g).

Subparagraph (a)(4) provides a tax rate of ½% upon wholesale sales. "Wholesale sales" are then specially defined in seven (7) categories. Category (4) consists of,

> "receipts received from the business of industrial processing or servicing including but not limited to enameling and plating of any tangible personal property which is owned by and which is to be sold by the person for whom such processing or servicing is done, either as a complete article or incorporated as a material, or as an integral or component part of tangible personal property produced for sale by such person in the business of manufacturing, assembling, constructing, refining or processing;"

Subparagraph (g) provides,

> "With respect to that part of the gross income of every person which is received from any source not enumerated in subsections (a) to (f) inclusive, of this section, including but not in limitation of the foregoing, gross income from professional services, personal services, or services of any character whatsoever, sales of real estate, rentals, all funds received for the performance of contracts, all funds received from the investment of capital, all receipts from retail sales and all receipts received from any source whatsoever, the tax shall be equal to two percent [2%] of such part of the gross income. The term 'retail sales' shall mean any sale of any property not included within definitions of 'wholesale sales' and 'selling at retail.'"

The business activity of Apex which is in question is the compressing and baling of loose scrap steel into 2 foot by 5 foot blocks which

have about 45% of the density of solid steel. The steel in question is owned by Inland Steel Corporation. It is formed into blocks by hydraulic compression and is returned to Inland where it is used as an integral component of the property produced for sale by Inland. The purpose of the operation is to turn the "loose" steel into a compact, usable and readily handled form for Inland's manufacturing process.

In interpreting a statute, IC 1-1-4-1 mandates that unless plainly repugnant to the intent of the legislature or the context of the rest of the statute, words and phrases shall be taken in their plain, or ordinary and usual, sense. Moreover, in determining which of two potential tax rates applies (as opposed to determining the right to an exemption)[1] tax statutes will be construed against the state and in favor of the taxpayer. *Gross Income Tax Div. v. Klink* (1953), 232 Ind. 473, 112 N.E.2d 581.

As Apex's expert witness in linguistics testified at the trial, "processing" and "servicing" in their plain and commonly understood meaning refer to performing some act upon a material in order to render it in a condition for further use, or for sale or into a finished state.

Apex operations clearly meet that definition under the evidence. In addition the other requirements of subsection (4) are met since the steel in question is tangible personal property owned by Inland and subsequently sold by Inland as a material or component of the tangible personal property it produced in its manufacturing operations.

The state, however, urges two arguments to avoid this result. First, it asserts that it would be plainly repugnant to the legislative intent to construe subsection (a)(4) according to the plain and ordinary meaning of the language used. It asserts that the clear intent of the legislature was to tax industrial servicing and processing at ½% rates *only* when the servicing or processing involves adding some kind of tangible personal property to property being serviced or processed.[2] In support it argues that the statute was amended to provide the language in (a)(4) in direct response to the decision in *Ingram-Richardson*

---

1. Exemption statutes are strictly construed. *Ind. Dept. of St. Rev., Sales Tax Div. v. R.C.A.* (1974), 160 Ind. App. 55, 310 N.E.2d 96.
2. Apex concedes that its operations would not meet this definition.

*Mfg. Co. v. Dept. of Treasury* (7th Cir., 1940), 114 F. 2d 889, *rev'd. other grounds* 313 U.S. 252. In that case the court found that income from the company's business, which was enameling stove and refrigerator parts, did not qualify for treatment as a wholesale sale under § 3(a)(3) of the 1937 act because the company was engaged in performing services rather than in making sales.[3]

We may readily infer that the amendment of the statute was at least in part a response to *Ingram-Richardson* and evidenced a purpose of taxing such activity at the sales tax rate applicable to wholesale sales. However, nothing in the case or the amendment demonstrate a legislative intent to restrict application of the amendment to the narrow circumstances asserted by the state. In the absence of any such manifestation the principle of *noscitur a sociis* should not be applied to create a restriction.[4]

> "[Generally] the legislature's intent is to enumerate specific objects or conditions which have come to their attention, but this enumeration is not intended to limit the operation of the statute to the specific objects set forth." 2A Sutherland, *Statutory Construction* (Sands) § 47.18, p. 111 (1973). (The criticism specifically addresses *ejusdem generis*, but is equally applicable to *noscitur a sociis*.)

We therefore do not agree that following the plain meaning of the statute is contrary to the manifest intent of the legislature. *See Oster v. Dept. of Treasury* (1941), 219 Ind. 313, 37 N.E.2d 528 which, in dictum, recognizes the broader interpretation of subsection (a)(4).

Finally, the state contends that to follow the plain meaning of (a)(4) is repugnant to its context with the rest of IC 6-2-1-3. In support, it argues that to so construe the section would render meaningless that portion of subsection (g) of the statute which indicates that "professional services, personal services, or services of any character whatsoever" shall be taxed at the 2% rate.

Again, we disagree. The sections are not in conflict, and our inter-

---

3. The 1937 act limited "wholesale sales" to *sales* of tangible personal property incorporated, etc.

4. The state urges its application since the amendment specifically enumerates enameling and plating.

pretation of subsection (a)(4) does not render the quoted portion of subsection (g) meaningless.

Subsection (g) by its own express language applies *only* to gross income received from a source *not* enumerated in subsections (a) to (f).[5] As stated by the court in *Oster, supra,* subsection (g) catches whatever services are not included in (a) to (f); it does not apply to that which is already captured in those subsections. To fall within (a)(4) the services or processing must be industrial and they must be performed on tangible personalty which is owned by and is to be sold by the business for whom they are performed as part of the property that business manufactures, etc. for sale to others. *Other* services are taxable under (g).

The trial court correctly interpreted the statute.[6] The judgment is therefore affirmed.

Staton, J. and Buchanan, C.J. (sitting by designation) Concur.

NOTE—Reported at 375 N.E. 2d 598.

---

5. Thus, subsection (g) within this limitation states that it also applies to "all receipts from any source whatsoever."

6. We therefore need not reach an evidentiary error assigned by the state asserting the irrelevance of a sales tax determination which was introduced in evidence. Since the court correctly interpreted the statute and the operative facts were stipulated, any error in the introduction of irrelevant evidence would not require a reversal. TR. 61.