**INDIANA STATE BOARD OF TAX COMMISSIONERS, Carleton L. Phillippi, Chairman, Taylor I. Morris, Jr., Durwood S. Strang, Allen W. Smith, Assessor of Pike County, Indiana, Leo Woods, Treasurer of Pike County, Indiana, Defendants-Appellants,**

v.

**Frank ROPP, Joseph Wesley Elbert, Howard Miley, Jr., James Lamey, Gerald Willis, Robert Adams, Jim Shoultz, Betty Stone, Wayne Henson, Opal Henson, Plaintiffs-Appellees.**

No. 1–1181A333.

Court of Appeals of Indiana, First District.

March 8, 1983.

Linley E. Pearson, Atty. Gen. of Indiana, Stephen R. Bock, Deputy Atty. Gen., Jeffrey L. Hunter, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

James G. McDonald, Jr., Princeton, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal from a judgment of the Pike Circuit Court upon findings of fact and conclusions of law in favor of plaintiffs-appellees Frank Ropp, et al.[1] (taxpayers), real property taxpayers owning real estate in Pike County, Indiana, and against the defendants-appellants Indiana State Board of Tax Commissioners, et al.[2] (State Board). The trial court's judgment permanently enjoined and restrained the State Board from utilizing the factor of 42 percent increase in real property tax assessments in Pike County and ordered tax duplicates to be issued pursuant to the assessments originally made by the Pike County taxing authorities.[3]

We reverse.

## STATEMENT OF THE FACTS

On November 4, 1976, the State Board adopted Regulation 17, also known as the Indiana Real Property Appraisal Manual. Regulation 17 was adopted in connection with the reappraisal of real property throughout the State as required under Ind. Code 6–1.1–4–4. As adopted by the State Board, Regulation 17 directed that the value of all land and improvements should be

---

**1.** Other named plaintiffs were: Joseph Wesley Elbert, Howard Miley, Jr., James Lamey, Gerald Willis, Robert Adams, Jim Shoultz, Betty Stone, Wayne Henson, and Opal Henson.

**2.** Other named defendants were: Carleton L. Phillippi, Chairman; Taylor I. Morris, Jr., Durwood S. Strang, Allen W. Smith, Assessor of Pike County, Indiana; Leo Woods, Treasurer of Pike County, Indiana.

**3.** The local taxing authorities of Pike County included the following offices: County Assessors, Township Assessors, and Township Trustee Assessors, and the County Board of Review for Pike County, Indiana.

adjusted by a reduction of 30 percent, an inflation adjustment factor, to determine true cash value.

This 30 percent inflation adjustment factor was challenged in *Francis X. McCloskey et al v. State Board of Tax Commissioners,* Cause No. 37226, a Hancock Circuit Court case decided on October 24, 1977, wherein the trial court enjoined the enforcement of Regulation 17 insofar as the implementation of the 30 percent inflation adjustment factor which provided:

"True Cash Value is the total value determined by items 1 through 7 less the just and proper inflation adjustment factor of 30%."

The State Board, acquiescing to the ruling, notified the Pike County taxing officials of the Hancock Circuit Court's ruling by way of two letters on November 8, 1977 and April 5, 1978, wherein the State Board instructed the local taxing authorities to disregard the 30 percent factor in their tax assessments. Nevertheless, the Pike County taxing officials on April 2, 1979, utilized the 30 percent factor in determining true cash value during the course of the 1979 real property tax assessment. Thereafter, on January 16, 1980, the State Board notified Evaline Hilgeman, the county auditor, that there would be a public hearing to consider the modification of real property assessments as of March 1, 1979. The hearing was held on February 5, 1980, and an equalization order was issued by the State Board on February 7, 1980, which modified the Pike County real property assessments by removing the 30 percent adjustment factor. On February 15, 1980, an objection to the initial equalization order was filed with the State Board, and the objection contained the signatures and addresses of 24 Pike County taxpayers who owned real estate there.

The State Board sent a letter to the county auditor on February 29, 1980, notifying that office a second equalization hearing would be held on March 19, 1980. Also, notice was sent to three of the first ten taxpayers listed on the objection petition and to seven other taxpayers whose names appeared thereon. The State Board also published notice of the second equalization hearing in a newspaper of general circulation in Pike County. After the second hearing, the State Board issued a final equalization order affirming the first one. Thereafter, the taxpayers filed their petition for appeal and injunction which the Pike Circuit Court granted in their favor.

ISSUES

The State Board presents three issues for review as follows:

I. Whether the trial court erred in holding that the defendant, Indiana State Board of Tax Commissioners, acted arbitrarily and unreasonably in setting aside the action of the Pike County Board of Review in relation to the 1979 assessment of real property in Pike County, Indiana?

II. Whether the trial court erred in holding that the defendant, Indiana State Board of Tax Commissioners, gave improper notice of the Pike County equalization hearings which it conducted?

III. Whether the trial court erred in holding that the defendant, Indiana State Board of Tax Commissioners, committed certain procedural errors in relation to the Pike County equalization hearings, errors primarily concerned with making an administrative determination prior to hearing, failing to inform taxpayers of certain "alleged" rights prior to hearing and conducting perfunctory hearings only?

DISCUSSION AND DECISION

*Issue I. Validity of Regulation 17*

The crux of the matter is the vitality of Regulation 17 as of April 2, 1979, when the Pike County taxing officials applied it in their assessment. Taxpayers support the decision of the trial court by claiming that the unappealed *McCloskey* decision was not binding on the Pike Circuit Court in the

instant case. They cite *Hagood v. State,* (1979) Ind.App., 395 N.E.2d 315, which held that the unappealed decision of a trial court is binding only as to the parties thereto and is not *stare decisis.* They assert that Regulation 17 was duly enacted by the State Board and should remain in force until properly rescinded, citing Ind.Code 4–22–2–6 which requires that a regulation must be rescinded in the same way that it is enacted. The procedure for promulgating new rules requires, among other things, notice and a hearing. Thus, taxpayers maintain that the attempt by the State Board to rescind that portion of Regulation 17 which imposed the 30 percent inflation adjustment factor by the mere expediency of a letter is of no force and effect and the regulation remains intact. Consequently, the State Board's order removing the 30 percent factor was arbitrary. The State Board advances numerous arguments, but we need address only the validity of the regulation.

Ind.Code 4–22–2–1 *et seq.* provides a statutory scheme for the promulgation of rules and regulations of state agencies. Ind.Code 4–22–2–1 provides:

"It is the intent to establish a uniform method of making, promulgating, filing, and publishing rules by all agencies of this state, to permit public participation therein and provide a method of making rules readily accessible to the public...."

Ind.Code 4–22–2–2 provides:

"(a) All rules, regulations ... which the issuing agency intends to have the effect or force of law but which are not promulgated, approved and filed as rules in conformity with the provisions of this chapter, *shall be invalid, void and of no force or effect after the first day of January 1978.* ...

(b) Within thirty [30] days after January 1, 1978, the secretary of state shall deliver to the legislative council a copy of every rule in effect on that day according to his records. Between February 1, 1978, and January 1, 1979, the secretary of state shall deliver to the council a copy of every rule filed with his office after January 1, 1978, within thirty [30] days

from the date it was filed. The council shall compile the rules according to the format and numbering system it develops under section 7.1(c) [4–22–2–7.1(c)] of this chapter and arrange for them to be converted to computer data base form. On or before January 1, 1979, the council shall deliver to each agency a computer printout or galley proofs of the agency's rules as they are known to the council and the secretary of state. On or before March 1, 1979, the governing body of the agency shall by resolution certify to the council and the secretary of state from the printout or galley proofs those rules which are in effect on December 31, 1978. If there is no governing body, the chief administrative officer of the agency shall make the certification by affidavit. In the case of an agency that fails to make a certification as to any of its rules within the time required, the secretary of state shall examine the computer printout or galley proofs and make the certification by affidavit. After March 1, 1979, the legislative council shall arrange to have the certified rules indexed and published as the 'Indiana Administrative Code.'" (Emphasis added.)

Other requirements in the chapter exist, but for our purposes we need focus only on Ind.Code 4–22–2–11, which provides:

"(a) Subject to the provisions of this section, any such rule (including matter incorporated by reference in compliance with section 7.1 [4–22–2–7.1] of this chapter) adopted, approved, recorded, and published as provided in this chapter shall be ... prima facie evidence that said rule was adopted, approved, and filed in accordance with this chapter and that the text of the rule published is the text adopted; however, the 1979 edition of the Indiana Administrative Code shall be conclusively presumed to contain the accurate, correct, and complete text of all rules in effect on December 31, 1978. *All rules filed with the secretary of state before December 2, 1978, but not compiled in the 1979 edition of the Indiana*

*Administrative Code are void."* (Emphasis added.)

The 30 percent factor was never certified and published in the 1979 edition of the Indiana Administrative Code, and, whatever vitality it may once have had, it expired pursuant to statutory enactment prior to its application on April 2, 1979 by the Pike County taxing officials. Apparently, the State Board determined not to certify the 30 percent factor for publication in the 1979 Code when it acquiesced to the *McCloskey* ruling on April 5, 1978.[4] Therefore, the trial court's conclusion that the 30 percent adjustment factor remained valid, and the State Board's action was arbitrary, was erroneous.

*Issue II. Improper notice*

The State Board next argues the trial court erred in finding that it had not given notice to the Pike County township trustees prior to the first equalization hearing pursuant to Ind.Code 6–1.1–14–8.

■ After the Pike County Board of Review approved the township trustee assessor's recommendation to apply the 30 percent inflation adjustment factor, the State Board reviewed the assessment and determined that it was improper. Subsequently, the State Board sent notice to the Pike County auditor and published the same notice in local newspapers of general circulation. The State Board contends the relevant statutory provisions regarding notice for the first equalization hearing are contained in Ind.Code 6–1.1–14–4 and Ind.Code 6–1.1–14–9. Ind.Code 6–1.1–14–8 does not pertain to the first equalization hearing. Ind.Code 6–1.1–14–4 and 9, however, only require the State Board to give notice to the county auditor, stating the time, place, and object of the hearing of the assessments. Also, the State Board must publish notice in a newspaper of general circulation in Pike County for the benefit of the taxpayers. We agree with the State Board as to the notice requirements for the first equalization hearing. The trial court erred

in applying Ind.Code 6–1.1–14–8 to the first hearing on February 5, 1980.

Ind.Code 6–1.1–14–7 requires that ten or more taxpayers who are affected by an equalization order may file a petition for review of the order with the county auditor. In the instant case, 24 Pike County taxpayers filed an objection to the initial equalization order within the prescribed time. The objection contained both the names and addresses of each individual who signed it. Ind.Code 6–1.1–14–8 did apply to the second equalization hearing and it provides in relevant part:

"At least three (3) days before the date fixed for the hearing, the board shall give notice of the hearing by mail to the township and county assessors whose assessments are affected by the order and to the first ten (10) taxpayers whose names appear on the petition for review at the addresses listed by those taxpayers on the petition."

■ The foremost object of construing a statute is to determine and carry out the true intent of the legislature. *Park 100 Development Company v. Indiana Department of State Revenue,* (1981) Ind., 429 N.E.2d 220; *Walton v. State,* (1980) Ind., 398 N.E.2d 667; and *Thompson v. Thompson,* (1972) 259 Ind. 266, 286 N.E.2d 657. Furthermore, as a general rule, tax-levying statutes are construed against the State and in favor of the taxpayer. *Park 100 Development Co., supra; Ralph L. Shirmeyer, Inc. v. Indiana Revenue Board,* (1951) 229 Ind. 586, 99 N.E.2d 847; *Indiana Department of State Revenue v. Food Marketing Corporation,* (1980) Ind.App., 403 N.E.2d 1093; *State, Department of Revenue, Inheritance Tax Division v. Monroe County State Bank,* (1979) Ind.App., 390 N.E.2d 1104; and *State v. Apex Steel and Supply Company, Inc.,* (1978) Ind.App., 375 N.E.2d 598.

■ Taxpayers support the trial court's findings and conclusions that adequate no-

---

4. We note that the remainder of Regulation 17, excepting the 30 percent inflation adjustment factor, was certified and published in the 1979 edition of the Indiana Administrative Code as 50 IAC 1–1–1 *et seq.*

tice was not given as follows: Notice was given to ten of the 24 petitioner-taxpayers, but not the *first* ten as required by the statute. Only three of the first ten were given notice. The record of the second hearing, which consists of four pages of handwritten notes by the hearing officer, reflects that 55 to 60 persons were present and that no questions were raised by those that attended as to the adequacy of the notice. The State Board submitted into evidence a signed and sworn certificate showing that all township and county assessors [5] had been sent written notice of the March 19, 1980 equalization hearing as required by statute. The taxpayers, in their petition for appeal and injunction, do not raise the question of notice as argued here. No contention was made at the trial in the Pike Circuit Court that the taxpayers were prejudiced or harmed in any way because of the manner of giving notice. The county assessor testified that no taxpayer present at the March 19, 1980 hearing tried to submit evidence, cross-examine or raise objections to the manner in which the hearing was conducted.

We are of the opinion that the purpose of the notice provision under Ind.Code 6–1.1–14–8 as concerns the giving of written notice to the first ten taxpayers is two-fold. First, it is for the practical benefit of the State Board so that if there are numerous petitioners, conceivably hundreds, it would not have the burdensome task of sending written notice to all. Second, the first ten taxpayers may be the primary persons organizing the petition and bringing the action. The petitioner-taxpayers were afforded a hearing; they appealed it, and they even won in trial court. We hold that the notice here was in substantial compliance with the statute, and any error is harmless absent a showing of prejudice. Taxpayers have shown none.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.

---

**5.** Township assessors are local officers whose actions ultimately are accepted or rejected by the State Board. Lack of statutory notice to any local taxing officials such as the township assessors is not an issue taxpayers may properly raise.