**GULF STREAM COACH,**
**INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMIS-**
**SIONERS, and State of Indiana,**
**Respondents.**

No. 20T05–8610–TA–00028.

Tax Court of Indiana.

Feb. 16, 1988.

Ernest J. Szarwark, Barnes & Thornburg, South Bend, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

## STATEMENT OF THE CASE

This case concerns an appeal from the final determination of the State Board of Tax Commissioners denying the Plaintiff an exemption claimed under IC 6–1.1–10–30. The parties have stipulated as follows:

1. Gulf Stream is a corporation organized, existing, and in good standing, for all periods relevant hereto, under the laws of the State of Indiana, with its principal place of business in Nappanee, Elkhart County, Indiana.

2. For all periods relevant hereto, Gulf Stream was engaged in the conversion and manufacture of motor homes and travel trailers (collectively "units").

3. The units were converted and/or manufactured by Gulf Stream in its facilities in Nappanee, Elkhart County, Indiana. Such units will hereinafter be referred to as "finished units".

4. The finished units were sold by Gulf Stream on a wholesale basis to retail dealers throughout the United States and Canada.

5. Gulf Stream converted and/or manufactured some units in response to specific orders from retail dealers. Other units were manufactured for stock.

6. In computing its Indiana personal property tax liability for the year 1985 (the year in issue herein), Gulf Stream determined its average inventory based on its inventory as of the start of the first day of each calendar month during the preceding year (1984). The Tax Board does not contest Gulf Stream's election of this average inventory method.

7. At the end of each calendar month during 1984, Gulf Stream had binding purchase orders for some of its finished units.

8. All finished units were warehoused by Gulf Stream in an area separate from its manufacturing area. These finished units remained in the separate warehouse area until a driver was located or became available to transport the finished units, or until Gulf Stream received an order for the finished units.

9. Finished units, the value of which were omitted from the 1985 Indiana personal property tax return, are at issue in this case.

10. Under the average inventory method (referred to in Stipulation 6 above), Gulf Stream had finished units on hand with a cost of $1,076,655.00. The finished units may be classified into three (3) distinct categories:

a. Finished units with a cost of $582,-306.00 which were subject to binding, preexisting purchase orders. These finished units were treated as sold and were removed from book inventory.

b. Finished units with a cost of $133,-354.00 which were also subject to binding, preexisting purchase orders calling for delivery to out-of-state customers. These finished units were carried in book inventory.

c. Finished units with a cost of $360,-995.00 which were either units not subject to binding, preexisting purchase orders or were to be shipped to Indiana customers. These units were also carried in book inventory.

11. In completing its March 1, 1985 Indiana business personal property tax return (Form 103), the finished units (referred to in Stipulation 10 above), were treated by Gulf Stream in the following manner:

a. Finished units with a cost of $582,-306.00 which had been treated as sold and had been removed from book inventory were not included in the inventory listed on Schedule B of Form 103 or anywhere else on said return. These finished units are at issue in this case.

b. Finished units with a cost of $133,-354.00 which were carried in book inventory and which were subject to binding, preexisting purchase orders calling for delivery to out-of-state customers were included in the inventory listed on Schedule B of Form 103.

The Tax Board granted an interstate commerce exemption for these finished units. They are not at issue.

c. Finished units with a cost of $360,-995.00 which were not subject to binding, preexisting purchase orders, or which were to be shipped to Indiana customers, were included in the inventory list on Schedule B of Form 103. The parties agree that these finished units are taxable.

12. In computing the amount of its exempt inventory as reported on Line 19 of Schedule B of Form 103, Gulf Stream used only the finished units which were carried in book inventory and which were subject to binding, preexisting purchase orders calling for delivery to out-of-state customers. The cost of these finished units was $133,354.00. The Tax Board allowed this exemption.

13. Consistent with its treatment of those finished units which were treated as sold and which were removed from book inventory, Gulf Stream did not claim the value of any finished unit which was treated as sold and removed from book inventory as exempt inventory on Line 19 of Schedule B of Form 103.

14. This method of keeping its books and records, including the method of inventory valuation, was in accordance with generally accepted accounting principles as recognized by the American Institute of Certified Public Accountants and by industry standards and practice. The Tax Board contests the relevance of generally accepted accounting principles for purposes of Indiana personal property tax returns.

The parties further stipulated that the issues for resolution are:

Issue I   Were the finished units which had been treated as sold and which were removed from Gulf Stream's book inventory properly omitted in computing Gulf Stream's inventory for Indiana Business Tangible Personal Property Tax purposes?

Issue II   Did Gulf Stream waive the exemption as to the portion of its finished units which had been treated as sold and which had been removed from its book inventory by not claiming an exemption on said units as required by law?

Issue III   Did the Tax Board arbitrarily and capriciously impose a penalty on Gulf Stream?

The allowance of an exemption for inventory stored in a warehouse and awaiting transshipment is found in IC 6–1.1–10–30(b) and (d) and reads:

(b) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property has been placed in its original package in a public or private warehouse for the purpose of shipment to an out-of-state destination;

(2) the property remains in the original package and in the public or private warehouse; and

(3) the property has been ordered and is ready for shipment in interstate commerce to a specific known destination to which the property is subsequently shipped.

.    .    .    .    .

(d) An exemption provided by this section applies only to the extent that the property is exempt from taxation under the commerce clause of the Constitution of the United States.

## ISSUE I

■ Gulf Stream argues that there was no requirement to report the units in question (units) because the units were not listed on its books as inventory. The regulations with respect to inventory, as well as the footnote to line 10 of Form 103, Schedule B, make it clear that all inventory must be reported regardless of how a taxpayer may carry the same on its books. Growing crops in the ground, property subject to taxation under the Public Utility Tax Act, and household goods are the only types of property that do not have to be reported. 50 IAC 4.1–1–2. Regulation 50 IAC 4.1–3–3 clearly describes how the exemption is claimed; the exemption is permitted to taxpayers who "file and show the amount for exemption on the proper line of the prescribed return forms." The "value of property for which the exemption is claimed shall be reported." 50 IAC 4.1–3–3(A)(4)(c).

■ Gulf Stream next argues that the units do not fall within the definition of "Unrecorded Inventory" required to be reported on line 8 of Form 103, Schedule B because removal from the books was consistent with generally accepted accounting principles. Gulf Stream contends that the definition of unrecorded inventory in 50 IAC 4.1–3–4 does not require the reporting of the units. This regulation defines inventory that must be reported as "inventory ... required to be reported for personal property tax purposes regardless of the fact that a taxpayer expenses such inventory in the period acquired for regular accounting or federal tax purposes or that a taxpayer's books and records fail to properly reflect inventory on hand but not recorded." However, removal of inventory from the books for financial accounting purposes, even though proper according to generally accepted accounting principles, is not necessarily proper for state tax accounting purposes. Gulf Stream's proper financial accounting methods do not preclude a determination that its method of tax reporting is deficient. "A presumptive equivalence between tax and financial accounting ... create[s] insurmountable difficulties of tax administration ... [I]f management election among acceptable options were dispositive for tax purposes, a firm, indeed, could decide unilaterally—within limits dictated only by its accountants—the tax it wished to pay." *Thor Power Tools Co. v. Commissioner* (1979), 439 U.S. 522, 541, 99 S.Ct. 773, 785, 58 L.Ed.2d 785. The regulations require full disclosure and 50 IAC 4.1–3–4 must be read to require disclosure of all units still under the control of the taxpayer. The footnote to line 10 of Form 103, Schedule B further illustrates that all tangible inventory of any nature owned by the person, taxable or nontaxable, must be reported. The exemption is then claimed by subtracting the exempt property on line 19.

If Gulf Stream's contentions are correct and the exemption can be claimed by merely omitting any mention of the inventory on the tax return, then Schedule B would simply have one line entitled "Inventory Subject to Tax." If this "method" of claiming the exemption were permitted, the State Board would have to conduct a full audit of every taxpayer to ascertain whether there was any inventory omitted, and if so, whether the omission was proper. This would result in an impossible burden on the

administration of the property tax. The requirement of full disclosure is not a trap for the unwary, it is a clear and necessary procedure to insure fair and accurate administration of the property tax laws.

### ISSUE II

■ IC 6–1.1–11–1 and Regulation 50 IAC 4.1–3–3(A)(5) provide that "[a]n exemption is a privilege which may be waived by persons who own tangible personal property that would qualify for the exemption. If the owner does not comply with statutory procedures to obtain the exemption, he waives the exemption." As discussed above, taxpayers are required to report all inventory before the claim for exemption is made. Gulf Stream's failure to comply with the statutes and regulations constitutes a waiver of the exemption.

■ Gulf Stream further contends that it has a constitutional right to the exemption under the commerce clause and that its conduct did not evidence the intentional relinquishment of that right to the extent that a waiver of the right would be valid. However, the commerce clause does not afford a personal constitutional right to any individual taxpayer.

The commerce clause protects commerce and not the individual taxpayers engaging in commerce. Again, the commerce clause language and its purposes reveal a focus on interstate and foreign trade rather than on out-of-state taxpayers. It is this focus on commerce instead of taxpayers that makes it possible for courts to find a tax in commerce originating from inside the taxing state in violation of the commerce clause.

. . . .

Although the commerce clause does not address individual taxpayers, other constitutional provisions provide protection to individuals against state tax discrimination. Under the equal protection clause, no state may discriminate against the class of taxpayers unless the classification is rationally related to a legitimate state purpose. Moreover, a state tax statute cannot so narrowly single out a group of taxpayers for adverse treatment that it constitutes a bill of attainder.

Tatarowicz, *An Analytical Approach To State Tax Discrimination Under The Commerce Clause*, 39 Vanderbilt L.Rev. 879, 927 (1986).

■ The commerce clause defines the relationship between the federal government and the governments of the individual states as it relates to the free flow of commerce. The focus of the clause is on commerce and not individual taxpayers. While it is true that individuals may be benefited or harmed by judicial application of the commerce clause, the same can be said of any provision in the constitution. No personal rights are conferred by provisions which dictate the structure of government. Gulf Stream's failure to follow proper procedure for claiming the exemption constitutes a waiver of the exemption as provided by statute.

■ Gulf Stream next argues that IC 6–1.1–10–30 permits an exemption which is constitutionally protected to the extent that statutory restrictions on obtaining the exemption are a violation of due process. This argument is merely a variation of Gulf Stream's "constitutional right" argument and is rejected for the same reasons. The exemption pertains to goods that are statutorily deemed to be in interstate commerce. The provision in subsection (d) only grants the exemption to "what the state could tax in the case of *ad valorem* taxation under the Commerce Clause of the United States Constitution, not from any other possible area of taxation." *State Board of Tax Commissioners v. Carrier Corp.* (1977), 266 Ind. 615, 365 N.E.2d 1385, 1388. Since the exemption is purely statutory, the state may set the requirements for its utilization and waiver. The question of whether this interpretation of the statute is in violation of Article 10, § 1 of the Indiana Constitution was answered in the negative by the Supreme Court upon rehearing of the *Carrier* case. *State Board of Tax Commissioners v. Carrier Corp.* (1977), 266 Ind. 615, 368 N.E.2d 1153, 1154.

■ Gulf Stream also contends that it was not given the opportunity for a meaningful hearing by the State Board. Gulf Stream has shown no facts supporting its claim that its due process rights were violated. The finding of the State Board was responsive and indicates that Gulf Stream had opportunity to make full argument at the hearing. Unlike the taxpayer in *Central of Georgia R. Co. v. Wright* (1907), 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, Gulf Stream was not precluded from defending its position at the administrative level. The State Board's determination was final only after full consideration of Gulf Stream's arguments.

### ISSUE III

■ IC 6–1.1–37–7 imposes a twenty percent penalty on a taxpayer who undervalues property on the tax return by more than five percent of the value that should have been reported on the return. There is no dispute that the value of the property at issue here is in excess of five percent of all the property to be reported by the taxpayer. The statute is clear and offers no opportunity for discretion in applying the penalty if the facts meet the requirements of the statute. Furthermore, Gulf Stream has not argued why the penalty is arbitrary or capricious.

Accordingly, the petition to set aside the final determination of the State Board of Tax Commissioners is hereby denied. Judgment for Respondent State Board of Tax Commissioners.