**MONARCH STEEL CO., INC.**
Petitioner,

v.

**STATE OF INDIANA TAX COMMISSIONERS,**
Respondent.

**No. 45T05–8810–TA–00054.**

Tax Court of Indiana.

Oct. 25, 1989.

---

Kenneth D. Reed, Hammond, for petitioner.

Linley E. Pearson, Atty. Gen. by Terry G. Duga, Deputy Atty. Gen., Indianapolis, for respondent.

## FACTS AND ISSUES

FISHER, Judge.

Monarch Steel Company, Inc. appeals the State Board of Tax Commissioners' final determination that a portion of Monarch's inventory sold to out-of-state customers is not exempt from personal property tax as provided by IC 6–1.1–10–30 and IC 6–1.1–10–29. The assessment date was March 1, 1987.

During the assessment period, Monarch, an Indiana corporation, was a steel service center located in East Chicago, Indiana. Monarch purchased and resold steel bars, plates, and coils. The steel was shipped to Monarch in plates as large as 96 inches wide by 300 inches long. The steel arrived at the warehouse without any packaging except for a band encircling steel bundles to keep them from rolling. After the steel arrived, it was stored in Monarch's warehouse until ordered by a customer. Depending upon the size or shape the customer ordered, the steel was either left in its current shape and size, cut into smaller rectangular pieces, or cut to a specific size or shape as requested by the customer. The requested shaped steel was achieved through a burning procedure using a template furnished by the customer or prepared at the customer's direction. Irrespective of the size or shape of steel the customer ordered, the customer paid for the entire plate of steel as it existed before the burning procedure.

Monarch calculated its business tangible personal property assessment on March 1, 1987 in the amount of $30,110. Subsequently, the State Board of Tax Commissioners reviewed the self-assessment and reassessed the property in the amount of $100,950. The increase is attributed to the

Board's denial of exemptions under IC 6–1.-1–10–30 and IC 6–1.1–10–29.

### DISCUSSION AND DECISION

The following issues are now before the court:

I. Is Monarch entitled to an exemption under IC 6–1.1–10–30(a)?

II. Is the Board's determination denying Monarch an exemption under IC 6–1.1–10–30(b) supported by substantial evidence?

III. Is Monarch entitled to an exemption under IC 6–1.1–10–29?

### ISSUE I

IC 6–1.1–10–30(a) provides in pertinent part:

(a) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from taxation if:

(1) the property is owned by a nonresident of this state;

(2) the owner is able to show by adequate records that the property has been shipped into this state and placed in its original package in a public or private warehouse for the purpose of transshipment to an out-of-state destination; and

(3) the property remains in its original package and in the public or private warehouse.

██ Monarch is not entitled to any exemption under IC 6–1.1–10–30(a) because section (a)(1) requires that the personal property be owned by a nonresident. Monarch is an Indiana corporation. Therefore, the Board's determination denying the requested exemption under IC 6–1.1–10–30(a) is affirmed.

### ISSUE II

IC 6–1.1–10–30(b) provides in pertinent part:

(b) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property has been placed in its original package in a public or private warehouse for the purpose of shipment to an out-of-state destination;

(2) the property remains in the original package and in the public or private warehouse; and

(3) the property had been ordered and is ready for shipment in interstate commerce to a specific known destination to which the property is subsequently shipped.

50 I.A.C. 4.1–3–3 expands on the statute in providing that the property must be ordered prior to the assessment date, which may be proven by a purchase order indicating an out-of-state destination.

██ The Board denied an exemption under IC 6–1.1–10–30(b) for inventory that Monarch could not substantiate was committed to interstate commerce. Monarch contends that the Board erred in denying an exemption under this section because: 1) the documentation required to substantiate its exemption claim was too costly and time consuming to maintain, and 2) Monarch is not a processor and thus, the inventory remains in its original package for shipment. Monarch alleged the same points of error for its 1986 assessment. Since that time, neither Monarch's business practices have changed, nor has IC 6–1.1–10–30(b) been amended to reflect Monarch's concerns.

In deciding Monarch's 1986 assessment, this court held:

IC 6–1.1–10–30(b) plainly requires that an order be in existence on the assessment date, that the specific known destination be evident, and that the property be ready for shipment. Predictions of what will ultimately happen to inventory, no matter how accurate those predictions may be, do not meet the requirements of the statute.... [I]nventory which had been ordered for a specific known destination is not exempt under IC 6–1.1–10–30(b) when the inventory is removed from the warehouse for custom cutting subsequent to the assessment date. The statute requires that the inventory be ready for out-of-state shipment on or before the assessment date. IC 6–1.1–10–30(b)(3). In addition, the concept of origi-

nal packaging requires that the inventory be placed in the warehouse in the form in which it will later be shipped. The fact that the customer may pay for both the cutout and the resultant scrap is irrelevant. *Monarch Steel Co. v. State of Indiana Tax Comm'rs* (1988), Ind. Tax, 527 N.E.2d 1171, 1172–73.

Because of the similarity with the 1986 assessment, the outcome for the 1987 assessment will be the same unless there is not substantial evidence in the record, viewed in its entirety, to support the Board's findings, or unless the Board's findings were arbitrary or capricious and an abuse of discretion. *Stokely–Van Camp v. State Bd. of Tax Comm'rs* (1979), 182 Ind.App. 91, 94, 394 N.E.2d 209, 211.

In reviewing the record, a reasonable person could find enough relevant evidence to support the Board's findings. The Court therefore finds that the Board's determination under IC 6–1.1–10–30(b) is supported by substantial evidence and is hereby affirmed.

### ISSUE III

Monarch next alleges that the Board erred when it denied an exemption for part of Monarch's property under IC 6–1.1–10–29. The statute provides:

> Personal property owned by a manufacturer or processor is exempt from property taxation if the owner is able to show by adequate records that the property is stored and remains in its original package in an instate warehouse for the purpose of shipment, without further processing, to an out-of-state destination. IC 6–1.1–10–29.

In its application of this statute to Monarch, the Board found,

> The Hearing Officer was correct in disallowing an exemption on that portion of the Taxpayer's inventory that is cut to size or formed into parts. A common thread running throughout the interstate commerce exemptions found in IC 6–1.1–10–29 and IC 6–1.1–10–30 is that the property must be in its original package, finished and ready for shipment.

The Hearing Officer testified at trial that she denied an exemption under IC 6–1.1–10–29 when she could tell that a piece of steel had been cut to a specific shape, as indicated by a customer purchase order. Because this was "further processing", she denied the exemption. The Hearing Officer also denied an exemption for the steel which was merely stored as inventory at Monarch. The Hearing Officer contended that because Monarch did not "further process" this steel, Monarch was not a processor as required under IC 6–1.1–10–29.

Monarch contends that it acts as a processor to parts of its inventory and therefore falls under IC 6–1.1–10–29. Monarch also contends that when it cuts steel to a requested shape using a template, it is not "further processing" the steel and, thereby this part of its inventory also qualifies Monarch for an exemption. Monarch claimed this same exemption in its 1986 assessment. Once again, the Board denied Monarch's exemption. However, on appeal, this court did not affirm the Board's findings as it did under IC 6–1.1–10–30 for the 1986 assessment, but rather remanded the issue back to the Board for it to consider and document its decision.

> In order for the reviewing court to [determine whether the finding is supported by substantial evidence or is an abuse of discretion or is arbitrary or capricious], it is ... necessary that written findings be before the court. Otherwise, we will find the remarkable situation as we have before us of a Commissioner testifying to explain to the trial court why the Board made the final determination they did. *Stokely–Van Camp*, 182 Ind.App. at 93, 394 N.E.2d at 211.

Although in sparse fashion, the Hearing Officer and the Board did state the reasons why an exemption was denied under IC 6–1.1–10–29 for 1987. The Board's findings were based upon the determination that Monarch was not a processor and was "further processing" the steel when it shaped the steel by using the burning procedure with the template.

The determinative factor in the State Board's findings is the definition of

the terms "processor" and "processing." On many occasions, the State Board has interpreted the taxation statutes through its rules and regulations. For example, the Board has defined the term "original package" where the legislature has remained silent. 50 I.A.C. 4.1–3–3(1)(f). However, nowhere in its rules or regulations pertaining to IC 6–1.1–10–29 has the Board defined the term processor or processing. Therefore, the court will show less deference to the State Board's definition in this case and will review the interpretation of the statute to determine if the State Board has upheld the intent of the legislature.

In its interpretation of IC 6–1.1–10–29, the Board found that cutting steel with a template to form smaller shapes and smaller pieces is "further processing." IC 6–1.-1–10–29, as it existed at the time of the 1987 assessment, did not define the term processing. However, the legislature had previously defined processing in another unrelated statute: " 'Processing' means an operation for the purpose of modifying the characteristics or properties of waste to facilitate transportation ..." IC 1983, 36–9–31–2.

Indiana courts have also defined the term "processing." Long before IC 6–1.1–10–29 was enacted, an early court held that cutting staves (narrow strips of wood or iron plates) with a bucking machine to form a uniform length to facilitate transfer and customer need was "partial processing." *Board of Comm'rs of Brown County v. Standard Oil Co.* (1885), 103 Ind. 302, 303–04, 2 N.E. 758, 759. Another Indiana court adopted the definition of processing as "performing some act upon a material in order to render it in a condition for further use, or for sale or into a finished state." *State v. Apex Steel & Supply Co., Inc.* (1978), 176 Ind.App. 187, 189, 375 N.E.2d 598, 600.

Other states have defined "process" as "a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing." *Fischer Artificial Ice & Cold Storage Co. v. Iowa Tax Comm'n* (1957), 248 Iowa 497, 81 N.W.2d 437, 441 (quoting *Cochrane v. Deener* (1877), 94 U.S. 780, 788, 24 L.Ed. 139). The Iowa court has also held that processing refers to "an operation whereby raw material is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable, tangible personal property." *Ramco, Inc. v. Director, Dep't of Revenue* (1976), Iowa, 248 N.W.2d 122, 123.

Webster's dictionary defines processing as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result: put through a special process as (1) to prepare for market, manufacture, or other commercial use by subjecting to some process ..." *Webster's Third New International Dictionary* at 1808 (1981).

Since 1987, IC 6–1.1–10–29 has been amended to define the term processor as:

a person that performs an operation or continuous series of operations on raw materials, goods, or other personal property to alter the raw materials, goods or other personal property into a new or changed state or form. The operation may be performed by hand, machinery, or a chemical process directed or controlled by an individual. IC 1989, 6–1.1–10–29.

This new subsection is effective as of March 1, 1989. Therefore, the amended statute does not apply to Monarch's 1987 assessment. However, if the amendment were enacted to clarify the law rather than change it, this amendment will be helpful in determining the legislature's intent when it used the word "processor" or "further processing" in the previously enacted statute. *See Indiana Dep't of State Revenue v. Cable Brazil, Inc.* (1978), 177 Ind.App. 450, 459, 380 N.E.2d 555, 559–60. "A presumption is raised that the Legislature intended to change the law unless it clearly appears an amendment was made only to express more clearly the original intention of the Legislature." *Id.* at 459, 380 N.E.2d at 559–60. Because the terms were never

defined in the prior statute, it is very probable that the legislature was clarifying the statute, especially considering that the Board had failed to do so.

Even if the addition to the statute is ignored, it is clear that the Board's interpretation of the term "processing" is in harmony with the legislature's intent. If cutting wood or iron with a bucking machine to facilitate transfer is partial processing, *Standard Oil Co., supra,* then cutting steel with a template to satisfy a customer request is also "partial processing", and therefore "further processing." Shaping the steel through burning is "subjecting it to a method or technique of preparation", putting it through a "special process", or "preparing it for market." *Webster's, supra.* Monarch's customers requested that the steel be shaped and Monarch was complying with their requests. This fact is not negatived when the customer pays for the entire plate of steel as it existed before the burning procedure.

Therefore, the court affirms the Board's finding that Monarch's procedure of shaping the steel with a template is processing and "further processing." Because this procedure is processing, Monarch is a processor. However, Monarch also owns property that is not "further processed." The issue then becomes whether Monarch owns any property that is not "further processed" for which it could obtain an exemption under IC 6-1.1-10-29.

The Hearing Officer found, and the Board agreed, that Monarch must process any property for which it claims an exemption under IC 6-1.1-10-29. Under the Board's interpretation of the statute, Monarch was not entitled to the exemption because the only property it processed was subjected to "further processing" after it arrived in its original package. Monarch contends that the legislature intended that the party claiming an exemption be a processor of at least some of its personal property, but not necessarily the property for which it is claiming an exemption.

In determining legislative intent, language of the statute itself must be examined, including grammatical structure of a clause or sentence in issue and if possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Simon v. City of Auburn, Ind.* (1988), Ind.App., 519 N.E.2d 205, 211.

IC 6-1.1-10-29 provides, "Personal property owned by a manufacturer or processor is exempt ... if [it] remains in its original package ... without further processing...." The statute provides that the processor must "own" the property; it does not require that the processor must "process" the property. Under the Board's interpretation, the word "own" is interpreted as meaningless and is completely ignored. If the legislature had intended otherwise, it would have used the following language, "Personal property processed by a manufacturer or processor ..." The legislature did not use this language. "Barring an expressed differing legislative intent, words in statutes are given their plain, ordinary, usual meaning." *Indiana Dep't of State Revenue v. Cable Brazil, Inc.,* 177 Ind.App. at 460, 380 N.E.2d at 561. The plain meaning of the word "own" does not include the term "process." Therefore the Board's finding that Monarch had to process all property for which it claimed an exemption under IC 6-1.1-10-29 is unreasonable and does not comport with the legislative intent.

■ This cause is remanded for the Board to determine whether Monarch owns any property that would qualify for an exemption under 6-1.1-10-29, but was denied an exemption either because the personal property had not been processed, or because Monarch was not a processor. The Board's findings should include a consideration of an exemption for property which is stored and remains in its original package in an instate warehouse for the purpose of shipment to an out-of-state destination yet unknown as of March 1, 1987.

If upon remand the Board finds that Monarch owns personal property that has not been further processed and otherwise qualifies for an exemption under IC 6-1.1-10-29, then IC 6-1.1-10-29.5 provides a

method for calculating Monarch's exemption, if any. The statute provides in pertinent part:

Sec. 29.5 (a) For purposes of sections 29, 29.3, 30(a), and 30(c) of this chapter, the term "adequate record" includes a *designation* on a bill of lading, freight bill, delivery receipt, manifest, packing slip, or an equivalent document, or a final entry in the records of the taxpayer *indicating that property is held for shipment to an out-of-state destination.* Such a designation for out-of-state shipment is sufficient for purposes of section 29, 29.3, 30(a), or 30(c) of this chapter *even though the specific out-of-state destination of the property is not included in the designation and even though the destination of the property is unknown on the assessment date.·*

(b) For the purpose of substantiating the amount of his personal property which is exempt from property taxation under section 29, 29.3, 30(a), or 30(c) of this chapter, a taxpayer shall maintain records that reflect the specific type and amount of personal property claimed to be exempt so that the taxpayer's taxable personal property may be distinguished from his exempt personal property. *In lieu of specific identification,* the taxpayer may elect to establish the value of his exempt personal property by utilizing an *allocation method* whereby the exempt personal property is determined by dividing:

(1) the value of the taxpayer's property shipped from the instate warehouse to out-of-state destinations during the twelve (12) month period ending with the assessment date; by

(2) the total value of all shipments of the taxpayer's property from the instate warehouse during the same period of time;

and applying this ratio to the taxpayer's total inventory of personal property that has been placed in the instate warehouse, that is in the instate warehouse as of the assessment date, and that meets the other requirements for an exemption under section 29, 29.3, 30(a), or 30(c) of this chapter. If the taxpayer uses the allocation method, he shall keep records which adequately establish the validity of the allocation. IC 6–1.1–10–29.5 (emphasis added).

Unlike the specific identification method required under IC 6–1.1–10–30(b), IC 6–1.1–10–29.5 does not require the specific out-of-state destination to be known on March 1, but rather, only that the destination be known to be out-of-state on March 1. Further, it permits an allocation method to determine exempt property.

If Monarch owns property exempt under the interstate commerce exemption as defined by the legislature, it is entitled to claim exemptions under IC 6–1.1–10–29 and IC 6–1.1–10–30, as long as Monarch does not claim two exemptions for the same inventory. *RCA Corp. v. State Bd. of Tax Comm'rs* (1988) Ind. Tax, 528 N.E.2d 125, 129.

The determination of the State Board denying the exemption pursuant to IC 6–1.-1–10–30 is affirmed. The determination of the State Board denying the exemption pursuant to IC 6–1.1–10–29 is affirmed as to the property that was cut to a requested shape with a template after March 1, 1987, and is reversed as to the remaining property. This cause is remanded for further action in accordance with this opinion.