**MONARCH STEEL COMPANY,
INCORPORATED,**
Petitioner,

v.

**STATE BOARD OF TAX
COMMISSIONERS,**
Respondent.

**No. 49T10–9111–TA–00060.**

Tax Court of Indiana.

April 16, 1993.

---

Kenneth D. Reed, Hammond, for petitioner.

Pamela Carter, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Monarch Steel Company, Inc. (Monarch), appeals from three final determinations by the Respondent, the State Board of Tax Commissioners (the State Board), assessing Monarch's business personal property for the March 1, 1987, 1988, and 1990 assessment dates. Monarch claims the State Board wrongly failed to grant it exemptions for personal property stored in interstate commerce under IND. CODE 6–1.1–10–29, 6–1.1–10–29.3, 6–1.1–10–29.5, and 6–1.1–10–30 (the interstate commerce exemptions), and raises three issues for the court's review:

I. Whether the State Board's final determination for the March 1, 1989, assessment is at issue.

II. Whether all cutting Monarch performs on the steel in its inventory is "processing" under the interstate commerce exemptions.

III. Whether Monarch is liable for undervaluation penalties under IND.CODE 6–1.1–37–7(e) for the 1990 assessment.

## FACTS AND PROCEDURAL HISTORY

The parties are no strangers to this court. Monarch and the State Board have been litigating Monarch's entitlement to the interstate commerce exemptions for several years, leading to two written opinions from this court, *Monarch Steel Co. v. State of Indiana Tax Comm'rs* (1988), Ind. Tax, 527 N.E.2d 1171 (*Monarch I*), and *Monarch Steel Co. v. State of Indiana Tax Comm'rs* (1989), Ind.Tax, 545 N.E.2d 1148 (*Monarch II*).

As in the previous appeals, the operative facts reveal that Monarch, an Indiana corporation, operates a steel service center. Monarch purchases large pieces of steel from manufacturers both inside and outside Indiana. It then resells the steel to customers both inside and outside Indiana. Sometimes Monarch is a simple broker and makes no changes to the steel, but it often uses a torch to cut the steel into smaller pieces prior to shipping. *See Monarch II*, 545 N.E.2d at 1149; *Monarch I*, 527 N.E.2d at 1172. In some cases, Monarch cuts the steel on a template to customer size and shape specifications, *see Monarch II*, 545 N.E.2d at 1149, while at other times, Monarch cuts the steel into basic geometric shapes with ninety degree angles. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I

■ At the outset, Monarch claims the State Board's final determination for the March 1, 1989, assessment is part of this original tax appeal. The chronology of the litigation, however, reveals otherwise.

Monarch's 1989 assessment was pending review before the State Board when this court issued its October 25, 1989, decision in *Monarch II* and remanded the 1987 assessment to the State Board. Monarch believed the State Board was required to review the 1989 assessment in accord with the decision in *Monarch II*, but that the State Board was not doing so. Accordingly, Monarch filed a petition for clarification with this court on September 13, 1990, asking whether *Monarch II* applied to 1989. Fifteen days later, on September 28, 1990, the State Board issued its final determination for 1989. On October 23, 1990, the court issued an order reminding the parties that tax years stand alone and that Monarch was free to file an original tax appeal for 1989 if it believed the State Board's actions were improper. On September 30, 1991, the State Board issued its final determinations for the 1987, 1988, and 1990 assessments. On November 13, 1991, Monarch appealed from both the September 28, 1990, and the September 30, 1991, final determinations.

"If a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." IND.CODE 33–3–5–11(a). The State Board

issued its final determination for the 1989 assessment on September 28, 1990, and the time for Monarch to file its appeal from that action expired forty-five days later on November 12, 1990. IND.CODE 6–1.1–15–5(d); *Ball Stores, Inc. v. State Bd. of Tax Comm'rs* (1974), 262 Ind. 386, 393, 316 N.E.2d 674, 676–78.[1] Monarch did not appeal, however, until November 13, 1991, a year and a day too late.

Regardless of the pending status of the 1987, 1988, and 1990 assessments on September 28, 1990, Monarch was obliged to pursue the rights triggered by the State Board's final determination of the 1989 assessment in a timely fashion. That Monarch believed 1989 was part of the instant appeal simply because 1989 was before the State Board at the same time other years were before the State Board does not make it so: it is the date of the final determination that matters. Without a timely filing under IC 6–1.1–15–5(d), the court is without jurisdiction over the 1989 assessment, and the State Board's final determination of the 1989 assessment is simply not at issue. *See Sherry Designs, Inc. v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 589 N.E.2d 285, 286.

## II

■ When reviewing a final determination of the State Board, the court's function is to determine whether the State Board's action " 'is supported by substantial evidence, is an abuse of discretion, is arbitrary or capricious, or is in excess of the State Board's authority.' " *Lakeview Country Club v. State of Indiana Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 392, 394 (quoting *Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 853). The parties remain in litigation because they have consistently given different interpretations to the language in the interstate commerce exemptions, under which taxability or exempt status generally

hinges on the "processing" or "packaging" the taxpayer performs on the property at issue. Specifically, the interstate commerce exemptions provide in relevant part:

**6–1.1–10–29 Manufacturer's or processor's property stored in instate warehouse for shipment to out-of-state destination**

(a) As used in this section, "manufacturer" or "processor" means a person that performs an operation or continuous series of operations on raw materials, goods, or other personal property to *alter the raw materials, goods, or other personal property into a new or changed state or form.* The operation may be performed by hand, machinery, or a chemical process directed or controlled by an individual. The terms include a person that dries or prepares grain for storage or delivery. (Emphasis added.)

(b) Personal property owned by a manufacturer or processor is exempt from property taxation if the owner is able to show by adequate records that *the property is stored and remains in its original package* in an in-state warehouse for the purpose of shipment, *without further processing,* to an out-of-state destination. (Emphasis added.)

(c) Personal property that is manufactured in Indiana and that would be exempt under subsection (b), except that it is not stored in its original package, is exempt from property taxation if the owner can establish in accordance with exempt inventory procedures, regulations, and rules of the state board of tax commissioners that the property:

(1) is ready for shipment *without additional manufacturing or processing, except for packaging;* and

(2) will be damaged or have its value impaired if it is stored in its original package. (Emphasis added.)[2]

**1.** Even if the limitations period could be deemed to have been tolled during the pendency of the motion for clarification, the time limit would nonetheless have expired at the latest on December 7, 1990.

**2.** The definition in subsection (a) applies to assessment dates beginning with March 1, 1989. P.L. 78–1989, § 1. In *Monarch II,* however, the court held the definition was probably a clarification of existing law and therefore relevant to assessments prior to March 1, 1989. *Monarch II*

### 6–1.1–10–29.3 Personal property shipped into state for transshipment out of state

Personal property shipped into Indiana is exempt from property taxation if the *owner or possessor* is able to show by adequate records that the property:

(1) is stored in an in-state warehouse for the purpose of transshipment to an out-of-state destination; and

(2) is ready for transshipment *without additional manufacturing or processing, except repackaging.* (Emphasis added.) [3]

### 6–1.1–10–30 Property in original package in warehouse for transshipment

(a) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from taxation if:

(1) the property is owned by a nonresident of this state;

(2) the owner is able to show by adequate records that the property has been shipped into this state and placed in its *original package* in a public or private warehouse for the purpose of transshipment to an out-of-state destination; and

(3) the property *remains in its original package* and in the public or private warehouse. (Emphasis added.)

For purposes of this subsection, a nonresident is a taxpayer who places goods in the original package and into the stream of commerce from outside of the state of Indiana.

(b) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property *has been placed in its original package* in a public or private warehouse for the purpose of shipment to an out-of-state destination;

(2) the property *remains in its original package* and in the public or private warehouse; and

(3) the property had been ordered and is ready for shipment in interstate commerce to a specific known destination to which the property is subsequently shipped. (Emphasis added.)

If a property tax exemption is claimed under this subsection for property which is not shipped to the specific known destination as required under subdivision (3), the taxpayer shall file an amended personal property tax return for the year for which the exemption for that property was claimed.

(c) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property *has been placed in its original package in a public warehouse;*

(2) the property was transported to that public warehouse by a common, contract, or private carrier;

(3) the owner is able to show by adequate records that the property is held in the public warehouse for purposes of transshipment to an out-of-state destination and is labeled to show that purpose; and

(4) the property *remains in its original package* and in the public warehouse. (Emphasis added.)

However, no personal property is exempt from property taxation under this subsection if the property is owned by the same person who owns or leases the public warehouse where the property is held.

(d) An exemption provided by this section applies only to the extent that the property is exempt from taxation under the commerce clause of the Constitution of the United States. (Footnote omitted.)

■■■ Applying these exemptions, the court in *Monarch I* held Monarch was not entitled to an exemption under IC 6–1.1–

at 1152–53. Subsection (c) applies to assessments on January 1, 1990, and thereafter. P.L. 77–1989, § 2.

**3.** The exemption applies to possessors only for assessments on February 26, 1992, and thereaf-

ter. P.L. 18–1992, § 20. For the years at issue in the present case, then, Monarch is entitled to an exemption under this section, if at all, only for property it owns, not property it merely possesses.

10–30(b) for steel it custom cut after the assessment date. *Monarch I,* 527 N.E.2d at 1172–73. In *Monarch II,* the court held Monarch's use of a template to cut steel to meet customer specifications constituted "further processing," and that steel subjected to such cutting was therefore not exempt under IC 6–1.1–10–29. *Monarch II,* 545 N.E.2d at 1152–53. The conceptual net effect of these two previous decisions is that Monarch and the State Board have divided Monarch's inventory into three distinct groups.

First, there is the inventory Monarch simply receives and ships without performing any cutting at all, and which is therefore undisputedly not "processed" by Monarch. Second, there is the inventory Monarch cuts with a template to customer specifications, and which is therefore undisputedly taxable because it is "processed." *Monarch II,* 545 N.E.2d at 1153. Finally, there is the inventory Monarch cuts without a template, and herein lies the heart of the present dispute.

In its September 30, 1991, final determination, the State Board found that all the cutting Monarch does, regardless of whether a template is used, is "processing," and that all the steel Monarch cuts is therefore ineligible for exemption. Monarch, on the other hand, draws a distinction between steel cut to order and steel cut for ease of transport or storage by Monarch, claiming it "processes" the former and "packages" the latter. The court agrees with Monarch and holds the State Board's interpretation is artificially narrow.

### "PROCESSING" AND "PACKAGING"

As noted above, a "processor" is:

a person that performs an operation or continuous series of operations on raw materials, goods, or other personal property to *alter the raw materials, goods, or other personal property into a new or changed state or form.* The operation may be performed by hand, machinery, or a chemical process directed or controlled by an individual

IC 6–1.1–10–29(a) (emphasis added). Similarly, processing means " 'to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result: put through a special process as (1) to prepare for market, manufacture, or other commercial use by subjecting to some process.' " *Monarch II,* 545 N.E.2d at 1152 (quoting *Webster's Third New International Dictionary* 1808 (1981). "Packaging," on the other hand, although not defined by statute, is "an act of instance of packing," *Webster's Third New International Dictionary* 1618 (1981), and packing is the preparation of "goods for shipment or storage." *Id.* Although these definitions are undeniably similar, "processing" and "packaging" are nonetheless not synonymous.

The interstate commerce exemptions, like all exemptions, must be strictly construed against the taxpayer and in favor of taxation. *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1225 (citing *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 404, *aff'd,* (1992), Ind., 599 N.E.2d 588). The court must nonetheless read an exemption to give full effect to the legislature's intent and avoid construing it "so narrowly its application is defeated in cases rightly falling within its ambit." *Id.* *See also Indianapolis Pub. Transp. Corp. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 908, *aff'd,* (1990), Ind., 550 N.E.2d 1277, 1278. Moreover, all statutory words are to be given their plain, ordinary, and usual meaning unless the legislature's intent reveals a contrary purpose, *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 987 (citing *Harlan Sprague Dawley, Inc.,* 605 N.E.2d at 1224), and the court cannot presume the legislature intended to enact a meaningless statute or a nullity. *Hinshaw v. Board of Comm'rs* (1993), Ind., 611 N.E.2d 637, 638 (citing *State, ex rel. Hatcher v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737, 739). Accordingly, the court is required, to the greatest extent possible, to give each word in a statute its full effect. *Maurer,* 607 N.E.2d at 987 (citing *Harlan Sprague Dawley, Inc.,* 605 N.E.2d at 1225).

Therefore, although both processing and packaging refer to the preparation of goods for market, the State Board's interpretation of the terms is arbitrary and capricious and cannot stand because it nullifies the distinction between the terms.

Under the interstate commerce exemptions, processing is concerned with the alteration of an article's state or form. IC 6–1.1–10–29(a); *Monarch II*, 545 N.E.2d at 1152.[4] Packaging, on the other hand, is concerned with transit and storage. *Webster's, supra*, at 1618. Processing, then, refers to the preparation of a final saleable product, while packaging presumes a final saleable product already exists, and all that remains is to prepare it for shipping or storage. For example, under IC 6–1.1–10–29(c), repackaging does not destroy exempt status if storage in the original package will damage the product or impair its value.

Applying the distinction between the two statutory terms to the case at bar, the court notes Monarch's large sheets of steel are not amenable to typical forms of packaging such as boxes, bottles, or bags.[5] The dispositive inquiry, however, does not involve whether Monarch places a large sheet of steel in any given type of wrapping. Rather, given the nature of Monarch's business, the question turns on whether Monarch cuts a piece of steel to prepare a product to sell to a customer, or to prepare an already completed product for shipment or storage.

■ Therefore, if Monarch cuts a sheet of steel to satisfy a customer's order, that is, to create a final saleable product, regardless of the use of a template and regardless of the customer's intent, Monarch has "processed" that steel within the meaning of the interstate commerce exemptions. On the other hand, if Monarch cuts a sheet of steel simply and solely to facilitate shipment or storage, Monarch has "packaged"

that steel. These are fact sensitive questions, and it lies with the State Board, not this court, to resolve them in the first instance. The court therefore refrains from analyzing Monarch's claims under each of the interstate commerce exemptions. The court notes, however, that, among other items, evidence such as invoices showing charges for cutting will be highly relevant.[6] Moreover, Monarch bears the burden to prove it is entitled to an exemption. *Harlan Sprague Dawley, Inc.*, 605 N.E.2d at 1225. Accordingly, although Monarch is free to argue it is entitled to alternative exemptions, *see RCA Corp. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 528 N.E.2d 125, 129, it is obligated to offer proof for each of those alternatives. If Monarch successfully shows a given item of inventory is eligible for more than one exemption, it will nonetheless get the economic benefit of only one exemption, because it cannot "claim two exemptions for the same inventory." *Monarch II*, 545 N.E.2d at 1154 (citing *RCA Corp.*, 528 N.E.2d at 129).

### III

Finally, Monarch claims the State Board improperly assessed a penalty against Monarch for undervaluation of its inventory on the 1990 assessment. IC 6–1.1–37–7(e) provides for a penalty whenever a taxpayer's personal property return reports an assessed value more than 5 percent less than the correct value. The penalty is 20 percent "of the additional taxes finally determined to be due as a result of the undervaluation," IC 6–1.1–37–7(e), and it is mandatory when "the facts meet the requirements of the statute." *American Juice Co. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 527 N.E.2d 1169, 1171 (quoting *Gulf Stream Coach, Inc. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 519 N.E.2d 238, 243).

---

4. Similarly, the Department of State Revenue defines processing "'as the performance by a business of an integrated series of operations which places tangible personal property in a form, composition, or character different from that in which it was acquired.'" *Harlan Sprague Dawley, Inc.*, 605 N.E.2d at 1229 (quoting 45 I.A.C. 2.2–5–10(k)).

5. *See, e.g.,* IND.CODE 6–2.1–4–5, 6–2.5–5–9 (the returnable container statutes).

6. The hearing officer relied on exactly this type of evidence to draw the distinction between steel Monarch "processes" and steel Monarch "packages." *Respondent's Exhibit 6* at 15.

In the case at bar, the State Board penalized Monarch for failing to include its "allocable expenses" as required by 50 I.A.C. 4.2–5–5(c) in the valuation of its inventory. Under the regulation, the taxpayer must include the costs of bringing inventory to the point of sale within the inventory's value.

 Although the statute's command is unavoidable when the facts are clear, it is equally well-settled that the imposition of the penalty is improper "when reasonable interpretive differences" divide the parties. *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 403. Given the nature and lengthy history of this litigation, "[t]he court finds that such interpretive differences exist." *Id.*

## CONCLUSION

The State Board issued its final determination for the March 1, 1989, assessment date on September 28, 1989. Monarch did not file this appeal until over one year later, well after the time for appeal had expired, and the 1989 assessment is therefore not before the court.

On the merits of Monarch's claim that not all cutting of steel is "processing" under the interstate commerce exemptions, the court reaffirms the holdings in *Monarch I*, 527 N.E.2d 1171, and *Monarch II*, 545 N.E.2d 1148, and reiterates that "processing" and "packaging" are different operations. They are distinguished by the former's emphasis on the alteration of an article in preparation of a final saleable product and the latter's emphasis on the preparation of an already completed article for shipping or storage.

Reasonable interpretive differences between the parties on the application of 50 I.A.C. 4.2–5–5(c) prevent the imposition of the undervaluation penalty in IC 6–2.1–37–7(e).

For all the foregoing reasons, the court now REVERSES the final determinations of the State Board for the 1987, 1988, and 1990 assessment dates and remands those assessments to the State Board for further consideration consistent with this opinion.