**FARIS MAILING, INC., Petitioner,**

v.

**The INDIANA DEPARTMENT OF STATE REVENUE, SALES AND USE TAX DIVISION and Gross Income Tax Division, and The State of Indiana, Respondents.**

No. 49T05–8611–TA–00050.

Tax Court of Indiana.

Jan. 16, 1987.

On Motion to Reconsider Feb. 2, 1987.

James K. Gilday, Miller Faires, Hebert & Woddell, P.C., Joseph D. Geeslin, Jr., Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, James Green, Deputy Atty. Gen., Indianapolis, for respondents.

## AMENDED ORDER ON PETITION TO ENJOIN COLLECTION OF TAX

FISHER, Judge.

### STATEMENT OF THE CASE

Faris Mailing, Inc., petitions the Court for an injunction enjoining the Respondent from proceeding with collection of the tax alleged to be due.

### FACTS

The Court, having heretofore taken Petitioner Faris Mailing, Inc.'s Petition to Enjoin the Collection of Tax by the Indiana Department of State Revenue (Petition to Enjoin) under advisement and counsel having filed briefs with regard to the issues and the evidence presented, now makes the following findings:

1. The Petitioner is an Indiana Corporation doing business in the State of Indiana with the principal place of business in Marion County, Indiana.

2. The Petitioner is engaged in the business of processing or preparing for mailing items which are to be used for mailing or contained in a mailing for customers.

3. That the Petitioner's business can best be characterized as "assemblage of the package".

4. The Petitioner for the calendar years ending December 31, 1982 and December 31, 1983 filed with the Indiana Department of Revenue monthly sales and use tax return forms ST-103.

5. That the Respondent, Indiana Department of State Revenue, issued on December 3, 1985, a "Notice of Tax Due" for proposed assessment against the Petitioner for unpaid sales and use tax for calendar years ending December 31, 1982 and December 31, 1983 in the amount of $3,634.61 and $3,938.95 respectively.

6. The Respondent, on November 11, 1986, issued a final determination of tax in the amount of $3,537.36 for calendar year ending December 31, 1982 and $3,546.23 for the calendar year ending December 31, 1983.

7. That the Respondent, on October 22, 1985, issued a "Notice of Proposed Assessment" against the Petitioner for the difference in the higher rate over the lower rate of Indiana Gross Income Tax on the Petitioner's taxable gross income for the Petitioner's fiscal years ending February 28, 1981, February 28, 1982 and February 28, 1983; the assessed differences between the higher rate and the lower rate of the Indiana Gross Income Tax on the Petitioner for these years are $13,394.12 for the fiscal year ending 2/28/81; $14,477.40 for the fiscal year ending 2/28/82; and, $6,989.00 for the fiscal year ending 2/28/83.

8. That Petitioner has current assets and property, plant and equipment of $1,066,492 and current liabilities of $550,974 all as of August 31, 1986, and net income in the amount of $126,984 for the year 1986 to date as of August 31, 1986.

IND.CODE 33-3-5-11(c) provides:

After a hearing on the petition filed under subsection (b), the tax court may enjoin the collection of the tax pending the original tax appeal, if the tax court finds that:

(1) the issues raised by the original tax appeal are substantial;

(2) the petitioner has a reasonable opportunity to prevail in the original tax appeal; and

(3) the equitable considerations favoring the enjoining of the collection of the tax outweigh the state's interests in collecting the tax pending the original tax appeal.

The Court further finds that the issues raised are substantial in that there is a question as to the propriety of the method of calculating interest on any tax due and

as to whether the Petitioner is a service business or manufacturer.

The Court does not find that the Petitioner has or will suffer irreparable harm if the injunction is not issued as prayed for herein, or that the Petitioner has a reasonable opportunity to prevail in the original tax appeal. Since the Court does not find that Petitioner has a reasonable opportunity to prevail in the original tax appeal it need not and does not address the matters in IC 33-3-5-11(c)(3).

## I. IRREPARABLE HARM

∎ The Department's assertion that "[m]ere economic injury does not warrant the granting of a preliminary injunction" is correct. *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679. However, this is a matter of degree, since there is a point at which economic injury could become so severe that it could constitute irreparable harm. In this case, Petitioner's president has testified that if the injunction is denied, the "only resource would be to liquidate something" in order to pay the tax and that "something" "would be the equipment." (T-17). Loss of this equipment, he testified, would force Petitioner to "reduce employees", to "lose contracts and possibly lose the payment of the contracts" that are presently being worked on because they could not be completed. (T-17). Elaborating on the reasons for Petitioner's current cash flow problem, he testified that "[h]istorically, this time of year [December] is a heavy workload for us.... [W]e will not receive payment for the product until the jobs are completed. We have several outstanding contracts that put us in the position of a poor cash flow." (T-15). The amount expected to be received in the next quarter was estimated at a "quarter of a million, 230 thousand." (T-16). When asked how Petitioner had dealt with cash flow problems in the past, the president responded that they borrowed money from the bank. (T-20). However, the Petitioner does not appear to have pursued borrowing as an alternative to liquidation. Furthermore, it was admitted that a bond or a line of credit could probably be obtained on the basis of the assets owned by Petitioner.

(T-31-32). Perusal of Petitioner's financial statement for the period ended August 31, 1986 (Petitioners Exhibit 1) confirms this fact. One could reasonably assume that Petitioner could borrow money instead of liquidating assets to pay the tax. The ratio of current assets to current liabilities is favorable; the Petitioner is not carrying an overly large load of long-term debt; the assets appear to be more than sufficient to provide a basis for securing additional debt. It seems that the largest obstacle faced by Petitioner in obtaining access to cash to pay the tax is its own inaction. (T-28). The only arrangements the Petitioner has considered are those necessary in order to post a security bond should the injunction be granted. (T-31-32).

Although it has not been raised, there may be a question as to whether lack of irreparable harm disqualifies Petitioners from obtaining an injunction. It has been suggested, at least, that a taxpayer has always had the ability to obtain an injunction where irreparable harm would ensue if the tax had to be paid in order to gain access to the courts and thus additional grounds for obtaining an injunction were given in IC 33-3-5-11. *Green v. Klinkofe* (sic), (N.D.Ind.1976), 422 F.Supp. 1021, 1027.

## II. REASONABLE LIKELIHOOD ON MERITS

A. *Sales and Use Tax.* The use tax is imposed upon the storage, use, or consumption of tangible personal property in Indiana, if the property was acquired in a retail transaction.... IND.CODE 6-2.-5-3-2(a).

However, certain uses are exempt if

the property was acquired in a transaction that is wholly or partially exempt from the state gross retail tax under any part of IC 6-2.5-5.... IND.CODE 6-2.-5-3-4(a)(2).

Petitioner contends that the purchase of labels, directories and other similar items is exempt under either IND.CODE 6-2.5-5-5.1 or IND.CODE 6-2.5-5-6 and that the

purchase of machine maintenance items is exempt under IND.CODE 6–2.5–5–3.

■ The argument that certain purchases are exempt under IC 6–2.5–5–6 is unconvincing. Under this statute, transactions in which the property is acquired for "incorporation as a material part of other tangible personal property which the purchaser manufactures, assembles, refines, or processes for sale in his business" are exempt. To satisfy the statute, at least in part, there must be some final product which the purchaser offers for sale in his business. Petitioner characterizes this end product as the "assemblage of the package". (T–43). The "package" (which consists of letters and other items the Petitioner's customer wishes to mail) already belongs to the customer. The property being sold then is the "assemblage", which is defined as "the act of assembling." (*Webster's Third New International Dictionary* 131 unabridged ed. 1981). This definition is an accurate description of the service provided by the Petitioner to its customers. The testimony of Petitioner's vice-president affirms this fact. When pointedly asked the end product to be sold, he was unable to describe anything more than a service:

Q. What tangible personal property are you selling to anybody?

A. I guess that depends on your definition. We assemble the package. It's our knowledge that we have in the way we assemble the package and how we perform it so it is acceptable to the United States Post Office. (T–44).

And:

Q. What are you selling? What end-product are you selling? What tangible personal property are you selling?

A. Well, we sell the package. I mean it's something you cannot do. It's the process of actually putting that package together in that format. (T–52).

■ In the same vein, it is impossible for the Petitioner to claim an exemption under IC 6–2.5–5–5.1. That statute requires that the transaction be one in which the purchaser has acquired property "for his direct consumption as a material to be consumed in the direct production of other tangible personal property in his business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture." Regardless of what Petitioner chooses to call his business, "production of other tangible personal property" is required. The elements which constitute this "production" phase are described as follows: "The package [is] then ... labeled in some manner, either by glue, direct imaging or heat transfer process, then sorted, tied and bundled to the regulations, available for pickup by the client, or he may ask us to deliver this to the post office as his agent." (T–36). The items used in this process cannot reasonably be assumed to transform the customer's package into a new product. *See Indiana Dept. of State Revenue v. Cave Stone* (1983), Ind., 457 N.E.2d 520. *See also Ingram-Richardson Mfg. Co. of Ind., Inc. v. Dept. of Treasury* (7th Cir.1940), 114 F.2d 889, 892, *rev'd on other grounds*, (1941), 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313.

■ As for the exemption claimed for the items used for machine maintenance under IC 6–2.5–5–3, it must fail for the reasons stated above since that statute too requires "production ... of other tangible personal property." Machines are used in petitioner's business not to produce "other tangible personal property" but to make the provision of Petitioner's services more efficient.

B. *Gross Income Tax.* The gross income tax

is imposed upon the receipt of ... the entire taxable gross income of the taxpayer who is a resident or domiciliary of Indiana.... IND.CODE 6–2.1–2–2(a)(1).

The imposition of the tax itself has not been challenged. Instead, Petitioner maintains that the wrong rate has been applied. The rate is "determined by the type of transaction from which the taxable gross income is received." IC 6–2.1–2–2(b).

■ The Department found that the receipt of gross income had been derived from "the provision of services of any character" under IND.CODE 6–2.1–2–5. Therefore, the "high" rate of tax was applicable under IND.CODE 6–2.1–2–3(b). Petitioner argues that its income was derived from either "wholesale sales" or "selling at retail", both of which are subject to the "low" rate under IC 6–2.1–2–3(a).

"Wholesale sales" are defined as any sale described in IC 6–2.1–2–1(c)(1). Petitioner contends that its activities fall within any one of three subsections described therein.

*First:* IC 6–2.1–2–1(c)(1)(A) covers "sales of tangible personal property ... for resale in the form in which it was purchased." Petitioner's argument merely consisted of a restatement of the statute without any application of law to its facts and the Court, after reviewing the record, fails to see how this section applies.

*Second:* IC 6–2.1–2–1(c)(1)(B) covers "sales of tangible personal property *which is to be directly consumed* in direct production *by a purchaser* in the business of producing tangible personal property by manufacturing, processing, refining, repairing, mining, agriculture, or horticulture...." (emphasis added). In the hearing brief (for which counsel for Petitioner is to be commended as it presented a thorough review of Petitioner's position), this statute was described as covering "a sale of tangible personal property *which had been directly consumed* in the direct production *by the producer* in the manufacturing or processing of a final product...." Hearing Brief, p. 28 (emphasis added). This exemption applies to the seller of the property, not his customer, if the customer uses the property in the manner described in the statute. There is no evidence that Petitioner's customers are using their "mailings" in some sort of manufacturing process, hence the statute is inapplicable.

*Third:* IC 6–2.1–2–1(c)(1)(C) covers sales of tangible personal property to be incorporated as a material or integral part of tangible personal property produced by a purchaser in the business of manufacturing, assembling, constructing, refining, or processing....

As in IC 6–2.1–2–1(c)(1)(B), this exemption belongs to the seller if his customer incorporates the property which he has purchased in some other property he produces. It is not applicable in this case.

"Selling at retail" is defined as

a transaction in which a retail merchant in the ordinary course of his regularly conducted business transfers the ownership of tangible personal property to another, conditionally or otherwise if ... the retail merchant had previously acquired the tangible personal property for the purpose of reselling it.... IC 6–2.1–2–1(b)(1).

As discussed above, the Petitioner does not sell tangible personal property but does provide services to which any transfer of property is purely incidental. Activity such as the Petitioner's is covered by IC 6–2.1–2–5(9), which includes "provision of services of any character." Therefore, it appears that the Respondent correctly applied the "high" rate to the Petitioner's receipt of gross income.

The Court's power to issue an injunction should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor. *College Life Ins. Co. of Am. v. Austin,* (1984) Ind.App., 466 N.E.2d 738, 744.

The issue raised as to propriety of the method of calculation of interest is not addressed since the injunction only goes to issue of the tax.

For the foregoing reasons, Petitioner's Petition to Enjoin Collection of Tax be and the same is hereby overruled and denied.

### ON MOTION TO RECONSIDER

Petitioner, Faris Mailing, Inc., has filed Motion to Reconsider the Court's Order on Petition to Enjoin Collection of Tax, entered on January 16, 1987, and which Motion and Order read as follows:

### (H.I.)

Petitioner avers in its motion that the Court failed to consider an issue raised in

its aforesaid Petition to Enjoin Collection of Tax which issue, simply stated, is whether IC 6–8.1–3–5 requires that the notices issued by the Respondent regarding sales and use tax be signed by the Commissioner or his designee (and if so, what is the legal effect of the lack of signature).

The Court initially was under the impression that Petitioner had waived that issue in its oral argument. A review of the transcript discloses that the waiver may be interpreted as not applying to this issue. So that this issue may be specifically addressed, the Motion to Reconsider is hereby granted.

■ IC 6–8.1–3–5 reads as follows:

Sec. 5. All notices, summons, warrants, waivers, demands, or other documents requiring an authorizing signature by the department must be signed by the commissioner or his designee; and when that document is signed it is an official department document.

Petitioner argues that the aforesaid statute should be read as "All notices ... must be signed by the Commissioner or his designee....." The Respondent argues that the statute should be read as any notice requiring an authorizing signature by the Department must be signed by the Commissioner or his designee.

[W]here the legislative intention is explicit, grammatical construction and the propriety of language may be disregarded. In other words, considerations of grammatical and rhetorical usage are not always controlling where intent in conflict therewith is disclosed, but are important in a doubtful case.

Generally punctuation is not controlling in the construction of a statute, and should not be allowed to obscure what is otherwise clear and unambiguous language of a statute, although it is a recognized aid in doubtful cases.

26 I.L.E. *Statutes* § 117 (1960).

After a plain reading of the statute, the Court finds that those notices, in which an authorizing signature is required, must be signed by the Commissioner or his designee. Assuming this statute is a "doubtful case," (with which assumption counsel seem to agree in their briefs) this interpretation is suppported by the rule of grammar which would denote the phrase "requiring an authorizing signature by the department" as a restrictive clause. "A clause or phrase is considered restrictive if its removal from the sentence would alter the meaning of the main clause." *Webster Standard American Style Manual* 14 (Merriam Webster 1985).

Petitioner's interpretation would have that phrase be a nonrestrictive phrase or parenthetical expression which, if it were such, would be enclosed between commas.

The Court finds therefore that the Petitioner has not sustained its burden, under IC 33–3–5–11(c), that the Petitioner has a reasonable opportunity to prevail in the original tax appeal.

The Order entered herein on January 16, 1987 is hereby reaffirmed and Petitioner's Petition to Enjoin Collection of the Tax is denied.

IT IS FURTHER ORDERED that this Order shall be included by reference in the said Order of January 17, 1987.