**MID–AMERICA MAILERS, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 45T10–9211–TA–00089.

Tax Court of Indiana.

Aug. 15, 1994.

Kenneth D. Reed, Abrahamson, Reed & Adley, Hammond, for petitioner.

Pamela Carter, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Mid–America Mailers, Inc. (Mid–America), appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board) assessing non-owned business personal property to Mid–America for the March 1, 1991, assessment date.

## ISSUES

I.  Whether the First Amendment to the United States Constitution bars imposition of the property tax on the non-owned business personal property.

II.  Whether the State Board properly determined the tax and assessed it to Mid–America as a non-owner in possession.

III.  Whether Mid–America is entitled to an exemption from the tax under the Commerce Clause of the United States Constitution.

## FACTS

Mid–America is an Indiana corporation with offices and operating facilities in Hammond. The company provides mailing services to businesses, not-for-profit organizations, and political groups from several midwestern states. Customers send Mid–America their advertisements, fund raising requests, and various solicitations (collectively, the printed materials). Mid–America places these printed materials into appropriate mailing envelopes and mails them in bulk. The customers are responsible for printing their materials and shipping them to Mid–America. The customers also give Mid–America mailing instructions, including addresses and mailing dates. Mid–America does not pay for the printed materials and it cannot sell them or otherwise dispose of them except to mail them in accord with customer instructions. If, however, a customer decides not to send its printed materials, for whatever reason, Mid–America is then free to dispose of the printed materials as scrap. Mid–America scraps approximately 25 percent of the printed materials it receives. On some occasions, Mid–America is able to sell the scrap paper, and on other occasions, it must pay to have the scrap hauled away.

At the time Mid–America filed its 1991 business personal property tax return for non-owned property, Form 103N, it possessed customers' printed materials, but did not disclose them on the return. The State Board later conducted an audit, determined Mid–America possessed customers' printed materials on March 1, 1991, and assessed business personal property tax against Mid–America.

Mid–America stores the printed materials on pallets. The State Board's hearing officer initially estimated the cost of the printed materials at one dollar per pound. Ultimately, however, the State Board changed the cost to $1,425 per pallet. This figure was based on the average per pallet amount contained in an insurance claim Mid–America filed after a fire that occurred a few months before the assessment date. The State Board and Mid–America agreed on the average number of pallets Mid–America possessed and the average percentage of scrapped material, and the State Board's calculations led to a total assessed value of $492,910, an amount Mid–America contests.

Mid–America now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

The court accords great deference to the State Board when the State Board is acting within the scope of its authority. *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243 (citing *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 399). A State Board final determination is reversible only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Hatcher v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 601 N.E.2d 19, 20 (quoting *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542

N.E.2d 1389, 1391). Like all other parties appealing an administrative decision, the taxpayer bears the burden to show the inaccuracy of the State Board's assessment. *See Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913 (quoting *State Bd. of Tax Comm'rs v. Traylor* (1967), 141 Ind.App. 324, 228 N.E.2d 46, 52, *trans. denied*).

## I

Because the printed materials derive their value, not only from the paper on which they are printed, but also from the printing itself, Mid–America sees the imposition of the tax as a violation of Mid–America's First Amendment free speech rights. This is a rather creative argument.

■ Although " '[r]egulations which permit the government to discriminate on the basis of content of the message cannot be tolerated under the First Amendment,' " *Arkansas Writers' Project, Inc. v. Ragland* (1987), 481 U.S. 221, 229–30, 107 S.Ct. 1722, 1728, 95 L.Ed.2d 209, 220 (quoting *Regan v. Time, Inc.* (1984), 468 U.S. 641, 648–49, 104 S.Ct. 3262, 3266–67, 82 L.Ed.2d 487), there is no allegation the property tax, IND.CODE 6–1.1–2–1, is content based. Moreover, "[i]t is beyond dispute that the States and the Federal government can subject [the press] to generally applicable economic regulations without creating constitutional problems." *Emmis Publishing Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 612 N.E.2d 614, 617 (quoting *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue* (1983); 460 U.S. 575, 581, 103 S.Ct. 1365, 1369, 75 L.Ed.2d 295, 302) (alteration added and in original).[1]

■ The property tax, which applies to "tangible property," IND.CODE 6–1.1–2–4, is a "generally applicable economic regulation." Indeed, Mid–America itself reported and paid the tax on leased vehicles and equipment in its possession on March 1, 1991. That the printed materials have messages is utterly irrelevant. The tax applies with equal force to motor vehicles, manufacturing/office equipment, and paper, with or without printed messages, and regardless of the content of any message.[2] First Amendment concerns are implicated when a tax "is directed at, or presents the danger of suppressing, particular ideas." *Emmis*, 612 N.E.2d at 617 (quoting *Leathers v. Medlock* (1991), 499 U.S. 439, 453, 111 S.Ct. 1438, 1447, 113 L.Ed.2d 494, 507–08). The property tax is not in any way directed at suppressing any ideas, and imposition of the tax on the printed materials does not offend the First Amendment.

## II

Mid–America next contends that it cannot be held liable for the tax because it lacked a "possessory interest" in the printed materials. Mid–America does not contest that it actually possessed the printed materials on the assessment date; it merely asserts its possession is insufficient to trigger liability. Mid–America is mistaken.

The State Board is obligated to "see that all property assessments are made in the manner provided by law." IND.CODE 6–1.1–35–1; *Bielski v. Zorn* (1994), Ind.Tax, 627 N.E.2d 880, 885. "Except as otherwise provided by law, *all tangible property* which is within the jurisdiction of this state on the assessment date of a year is subject to assessment and taxation for that year." IND. CODE 6–1.1–2–1 (emphasis added). These

---

**1.** Mid–America is not a member of the fourth estate, but Mid–America's First Amendment rights are neither greater nor less than the press's. *See, e.g., Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (discussing the First Amendment rights of the public and press to attend criminal trials). *See generally* 4 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance & Procedure* § 20.19, at 113 & n. 2 (2d ed. 1992).

**2.** *See, e.g., State Bd. of Tax Comm'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920 (grain in elevators); *Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 620 N.E.2d 39 (automobiles); *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708 (large pieces of steel); *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 568 N.E.2d 1116 (automobile glass); *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398 (formal wear).

rules place an affirmative duty on the State Board to assess all assessable property. *See State Bd. of Tax Comm'rs v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, 730.

■ Within IND.CODE 6–1.1, " 'tangible property' means real property and personal property as those terms are defined in [IC 6–1.1–1]." IND.CODE 6–1.1–1–19. IND. CODE 6–1.1–1–11 defines personal property as:

(1) nursery stock that has been severed from the ground;

(2) florists' stock of growing crops which are ready for sale as pot plants on benches;

(3) billboards and other advertising devices which are located on real property that is not owned by the owner of the devices;

(4) motor vehicles, mobile houses, airplanes, boats, and trailers;

(5) foundations (other than foundations which support a building or structure) on which machinery or equipment is installed; and

(6) *all other tangible property (other than real property) which is being:*

(i) held for sale in the ordinary course of a trade or business;

(ii) *held, used, or consumed in connection with the production of income;* or

(iii) held as an investment.

. . . .

(Emphasis added). The printed materials are pieces of paper with printing on them: in other words, they are tangible property. Preparing the printed materials for mailing is Mid–America's main source of income, and the materials therefore constitute tangible property "held, used, or consumed in connection with the production of income" within the meaning of IC 6–1.1–1–11.

■ The law determining liability for taxation of tangible property in this state is clear:

(a) The owner of any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property.

(b) A person holding, possessing, controlling, or occupying any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property unless:

(1) he establishes that the property is being assessed and taxed in the name of the owner; or

(2) the owner is liable for the taxes under a contract with that person.

When a person other than the owner pays any property taxes as required by this section, that person may recover the amount paid from the owner, unless the parties have agreed to other terms in a contract.

IND.CODE 6–1.1–2–4. This statute is unambiguous, and in enacting it, the legislature made clear its policy decision to give the State Board "the discretion to tax *either* the owner or the possessor unless the possessor can prove the owner is being taxed, or the owner has accepted liability for the tax under contract." *Jewell Grain Co.,* 556 N.E.2d at 922 (emphasis added). Mid–America did not attempt to prove either that the various owners of the printed materials were being taxed or that any or all of them had contractually accepted liability. Mid–America is therefore liable for the tax.

■ Notwithstanding liability, Mid–America claims the State Board's cost per pallet valuation method was arbitrary, capricious, and wholly without support in the State Board's regulations. The State Board valued the printed materials as inventory, but Mid–America claims the printed materials did not constitute inventory because Mid–America neither owned nor leased them. This argument fails because Mid–America held the printed materials as a bailee.[3]

---

**3.** Aside from the bailment, however, Mid–America's good faith belief that its possession was without legal effect because it neither owned nor leased the printed materials is irrelevant. Like our supreme court in *Jewell Grain Co.,* the court

is unaware of any "provision allowing one protection from tax liability merely because one's failure to file [the Form 103–N] was in good faith." *Jewell Grain Co.,* 556 N.E.2d at 923. Moreover, "[g]rowing crops in the ground, prop-

■ Generally, "[a] bailment is an express or implied agreement between a bailor and a bailee in which the bailee is entrusted to accomplish a specific purpose with the bailor's personal property and when the purpose is accomplished, the property is returned to the bailor." *Turner v. Clary* (1993), Ind.App., 606 N.E.2d 878, 880 (citing *Norris Automotive Serv. v. Melton* (1988), Ind.App., 526 N.E.2d 1023). The bailee need not always return the property, however; a bailor may instruct a bailee to sell the property. *See, e.g., Wilson v. Reynolds* (1938), 213 Ind. 436, 13 N.E.2d 218; *Reissner v. Oxley* (1881), 80 Ind. 580. In the case at bar, Mid–America possessed the printed materials under agreement with the owners or the owners' brokers. The purpose of its possession was to assemble the printed materials and mail them to the stipulated addresses. This was a bailment, and it is not altered by the fact that Mid–America did not sell the printed materials.

One of the chief incidents of ownership is the right of disposition. *Indiana Waste Systems of Indiana, Inc. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 633 N.E.2d 359, 367 (quoting *Rhoades v. State* (1946), 224 Ind. 569, 70 N.E.2d 27, 29). Just as the owners of the printed materials were free to distribute them to potential customers and donors without cost, so they were free to instruct their bailee, Mid–America, to do the same. More important, though, just as the printed materials would constitute inventory in the hands of the owners, so they constituted inventory in the hands of the owners' bailee.

Within 50 IAC 4.2,

'inventory' means the aggregate of those elements of cost incurred to acquire or produce items of tangible personal property as defined in 50 IAC 4.2–1–1(h) which are:

(1) held for sale in the ordinary course of business;

(2) are currently in the process of production for subsequent sale;·

(3) are ultimately to be consumed in the production of the goods or services to be available for sale; or

(4) *are utilized in marketing or distribution activities.*

(b) The term 'inventory' embraces the following:

(1) Goods awaiting sale. Goods or commodities awaiting sale which include, but are not limited to:

(A) the merchandise of a retail or wholesale concern;

(B) the finished goods of a manufacturer;

(C) commodities from farms, mines, and quarries; and

(D) goods which are used or trade-in merchandise and by-products of a manufacturer.

(2) Work in process. Goods or commodities which are in the course of production at the Indiana location, i.e., items needing further processing to be considered finished or ready for shipment.

(3) Raw materials and supplies. *Goods which will be consumed or used in either the Indiana manufacturing process or in any other manner by the taxpayer, directly or indirectly. This category would include, but not be limited to, raw materials, supplies, repair parts, expendable tools and samples.*

50 IAC 4.2–5–1 (emphasis added). The printed materials are business supplies of their owners. After Mid–America assembles them into mailable packages, the printed materials are distributed as part of a given owner's marketing activities. They therefore fall squarely within the category of inventory, and because Mid–America's acts of storing, assembling, and mailing are exactly the acts the owners would perform, the printed materials are inventory in Mid–America's hands, just as they would be in the owners'.

■ Because the printed materials are inventory, they must be valued as inven-

---

erty subject to taxation under the Public Utility Tax Act, and household goods are the only types of property that do not have to be reported." *Gulf Stream Coach, Inc. v. State Bd. of Tax*

*Comm'rs* (1988), Ind.Tax, 519 N.E.2d 238, 241 (citing 50 IAC 4.1–1–2) (repealed, now 50 IAC 4.2–1–1(h)).

tory. Mid–America did not record the printed materials on its books. Under 50 IAC 4.2–5–8(c), unrecorded inventory is valued at its actual cost. As mentioned, the State Board valued the printed materials according to the amount used in an insurance claim. As the record stands now, however, there is no substantial evidence to support the conclusion that the insurance claim amount reflects the actual costs of the printed materials. The court will reverse a State Board final determination that is unsupported by substantial evidence. *See, e.g., Monarch Steel Co.,* 611 N.E.2d at 711 (citing *Lakeview Country Club v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 392, 394).

The record does not show how, if at all, the insurance claim amount reflects the actual costs of the printed materials. For example, the evidence reveals the State Board consulted a handful of Chicago area printers, but none of those printers worked on Mid–America's printed materials and, therefore, could not provide evidence of the printed materials' actual costs. Therefore, the court remands the valuation issue to the State Board for further consideration.[4]

### III

Mid–America receives many of the printed materials at its Hammond facility from Illinois printers. After it completes its work on the printed materials, it mails them to their designated destinations, many of which are in Illinois. Mid–America therefore claims the printed materials are exempt from tax as items in interstate commerce under the Commerce Clause of the United States Constitution. The case is not quite so simple, however.

IND.CODE 6–1.1–10–29, 29.3, 29.5, and 30 create exemptions from property tax for personal property in interstate commerce (the interstate commerce exemptions). *See Monarch Steel Co.,* 611 N.E.2d at 711–13. IND. CODE 6–1.1–11 creates the procedures to claim the exemptions in IC 6–1.1–10. Mid–America did not seek the benefits of any of the exemptions for the printed materials;

indeed, it could not have, since it did not disclose its possession of the printed materials on its Form 103–N.

In an attempt to avoid the effect of its failure to disclose, Mid–America asserts that the interstate commerce exemptions are nothing more than gratuitous statements because the Commerce Clause of the United States Constitution, not the interstate commerce exemptions, is the true source of the printed materials' allegedly exempt status. Mid–America makes no claim the interstate commerce exemptions are unconstitutional: it merely argues they are irrelevant. They are not.

■ Almost twenty years ago, the United States Supreme Court definitively laid to rest the notion, which had percolated through constitutional jurisprudence for years, that the States lacked the authority to regulate interstate commerce. *See Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 288, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326, 336–37. *See also Goldberg v. Sweet* (1989), 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607. Indiana exercises its right to regulate interstate commerce in situations like the case at bar through the property tax, the interstate commerce exemptions from that tax, and the procedures to apply for an exemption. Absent a judicial determination that Indiana's statutory scheme is unconstitutional, it is therefore incumbent on taxpayers, including Mid–America, both to comply with the procedures to seek an exemption under IC 6–1.1–11 and to meet the elements of the interstate commerce exemption sought.

■ Duly promulgated statutes enjoy a strong presumption of constitutionality, and the party challenging the constitutionality bears the burden to overcome the presumption. *State Line Elevator, Inc. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 528 N.E.2d 501, 503 (citing *Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8, 11, *appeal denied,* 460 U.S. 1076, 103 S.Ct. 1761, 76 L.Ed.2d 338). Mid–America, however, has not shown or attempted to show that imposi-

---

4. On remand, the parties, of necessity, will address the entire range of valuation questions. Accordingly, the court at this time need not, and does not, address any of the questions the not-for-profit status of some of the owners may raise.

tion of the tax on the printed materials violates the Commerce Clause under the *Complete Auto* test, which states that "a state tax will withstand scrutiny under the Commerce Clause if 'the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.'" *Goldberg*, 488 U.S. at 257, 109 S.Ct. at 587, 102 L.Ed.2d at 614 (quoting *Complete Auto*, 430 U.S. at 279, 97 S.Ct. at 1079). Moreover, it is uncontested that Mid–America did not seek the exemption. It therefore cannot now be heard to complain.[5]

### CONCLUSION

Mid–America was obliged to report the printed materials on its Form 103–N, and the State Board had the authority to assess the tax on the printed materials to Mid–America.

Neither the First Amendment nor the Commerce Clause has any effect on Mid–America's liability.

The State Board was obligated to value the printed materials in accord with its regulations. The record, however, lacks substantial evidence to show the State Board adhered to its regulations in valuing the printed materials. Therefore the court remands the matter to the State Board for further consideration on this issue and affirms the State Board's final determination in all other respects.

---

5. Mid–America protests vigorously on the ground that IC 6–1.1–10–29.3 applied only to owners, and not possessors, prior to 1992. This is irrelevant.

Mid–America was obligated to report the printed materials. *See* IND.CODE 6–1.1–3–9; *Gulf*

*Stream Coach*, 519 N.E.2d at 241. Without first disclosing, there can be no exemption, and because Mid–America did not disclose, the inquiry ends, regardless of the non-discloser's status as either an owner or a possessor.