**SONY MUSIC ENTERTAINMENT, INC., Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9411–TA–00250.

Tax Court of Indiana.

May 22, 1997.

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

Petitioner, Sony Music Entertainment, Inc. ("Sony Music") appeals from a final determination by the State Board of Tax Commissioners in which the State Board denied Sony Music an interstate commerce exemption from the property tax for certain of its personal property held in Indiana. Sony Music admits that the goods in question are commonly removed from their original packages but claims that they are removed only for repackaging for transshipment out of state. The State Board disagreed and held that the goods are not merely being repackaged for shipping purposes but are being processed into final saleable products. The Court affirms the State Board's assessment.

## FACTS AND PROCEDURAL HISTORY

The parties stipulated to the relevant facts. Sony Music is a Delaware corporation with its principal place of business in New York. Sony Music manufacturers audio compact discs and sells them at wholesale across the nation. Because Sony Music's manufacturing facilities do not have sufficient capacity to meet the demand for its products, it entered into an agreement with Digital Audio Disc Corporation ("DADC") to produce additional discs. DADC has its principal facilities in Terre Haute, Indiana. Both Sony Music and DADC are subsidiaries of Sony Corporation of America.

The evidence shows that the compact discs at issue are designed to be sold in plastic jewel cases with front and back liners. The liners are analogous to album covers, featuring various designs, graphics, and pictures. The discs also often come with short booklets containing promotional information, lyrics, or other information. Once a disc has been placed in its tray in a jewel case with the appropriate liner and booklet, either the case is shrink wrapped alone, or it is placed in a longbox, and the case and longbox are shrink wrapped together. Longboxes are printed cardboard sleeves that are folded and glued around the jewel cases in order to make

them compatible with the old record album displays in retail shops.

Under the agreement between DADC and Sony Music, DADC produced the actual discs as well as most of the plastic trays and jewel cases. Sony Music supplied the booklets, liners, and longboxes (collectively, the "artwork"). Sony Music purchased the artwork from out-of-state suppliers, and all of the design and production work on the pieces was completed outside Indiana. DADC was responsible for preparing the discs for sale by placing the artwork in the jewel cases with the discs and putting many of the cases in longboxes. DADC would then pack twenty-five to thirty fully assembled compact discs into cardboard boxes for shipment to locations throughout the United States.

On March 1, 1993, Sony Music had close to $4 million in artwork stored in DADC's warehouse in Terre Haute. More than 52% of the pieces were booklets and liners; over 47% were longboxes; and the remainder were miscellaneous items. When Sony Music filed its 1993 business personal property tax return for this property, it claimed an exemption for 98.6% of these items under Ind.Code Ann. § 6–1.1–10–29.3 (West Supp.1996) on the grounds that they were ready for transshipment out of state, except for repackaging. The parties stipulated that during the twelve months preceding March 1, 1993, Sony Music shipped slightly more than $45 million in merchandise from DADC, 98.12% of which was shipped out of state.

After performing an audit, a hearing officer for the State Board found that the artwork was not merely being stored for transshipment, but rather the booklets, liners, and longboxes constituted "raw materials" that had to be assembled with the compact discs to form a saleable good. Therefore, the officer concluded that the inventory of artwork was not exempt under Ind.Code Ann. § 6–1.1–10–29.3. He initially recommended an assessment of $804,530 but later-increased that figure to $844,760. After a hearing, the State Board affirmed this assessment on September 30, 1994. Sony Music timely filed its notice of intent to appeal on October 31, 1994.

## STANDARD OF REVIEW

The determinations of the State Board are accorded great deference when the Board is operating within the scope of its authority. *Dav–Con, Inc. v. State Bd. of Tax Comm'rs*, 644 N.E.2d 192, 194 (Ind. Tax Ct.1994); *Mid–America Mailers, Inc. v. State Bd. of Tax Comm'rs*, 639 N.E.2d 380, 382 (Ind. Tax Ct.1994). This Court will reverse such a determination only if the Board's conclusion is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Dav–Con*, 644 N.E.2d at 194; *Mid–America Mailers*, 639 N.E.2d at 382.

## DISCUSSION

■ An interstate commerce exemption, like any other tax exemption, is strictly construed against the taxpayer and in favor of taxation, *Monarch Steel Co. v. State Bd. of Tax Comm'rs*, 611 N.E.2d 708, 713 (Ind. Tax Ct.1993), and the taxpayer bears the burden of proving that it is entitled to the exemption, *see Dav–Con*, 644 N.E.2d at 194; *Mid–America Mailers*, 639 N.E.2d at 383. This is so " '[b]ecause an exemption releases property from the obligation of bearing its share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property.' " *National Assoc. of Miniature Enthusiasts v. State Bd. of Tax Comm'rs*, 671 N.E.2d 218, 220 (Ind. Tax Ct.1996) (quoting *St. Mary's Med. Ctr., Inc. v. State Bd. of Tax Comm'rs*, 534 N.E.2d 277, 280 (Ind. Tax Ct.1989), aff'd, 571 N.E.2d 1247 (Ind.1991)). Of course, the Court's objective remains to ascertain and effect the intent of the legislature, so the Court will not read an exemption " 'so narrowly its application is defeated in cases rightly falling within its ambit.' " *Monarch Steel*, 611 N.E.2d at 713 (quoting *Harlan Sprague Dawley, Inc. v. Department of State Revenue*, 605 N.E.2d 1222, 1225 (Ind. Tax Ct.1992)).

■ In this case, Sony Music claims the exemption from Indiana's personal property tax provided in Ind.Code Ann. § 6–1.1–10–29.3 (West Supp.1996). The statute provides:

Personal property shipped into Indiana is exempt from property taxation if the owner or possessor is able to show by adequate records that the property:

(1) is stored in an in-state warehouse for the purpose of transshipment to an out-of-state destination; and

(2) is ready for transshipment without additional manufacturing or processing, except repackaging.

Ind.Code Ann. § 6–1.1–10–29.3. The State Board does not dispute that Sony Music has shown by adequate records that the artwork is stored in an in-state warehouse for the purpose of transshipment to an out-of-state destination. The issue is whether DADC's assembling of the discs, jewel cases, artwork, and longboxes constitutes more than "repackaging." The Court holds that it does and that, therefore, Sony Music is not entitled to the claimed exemption.

Sony Music argues that the artwork is exempt by the plain meaning of the statute. Sony Music points out that Webster's defines "repackage" in part as "to package again or anew." Webster's Third New International Dictionary 1923 (1981) (hereinafter Webster's Dictionary). The verb "package" is defined in part in terms of its noun form. It means "to make into or as if into a package." *Id.* at 1618. Sony quotes the following passage for the definition of the noun "package":

1 ...: the act or process of packing ... 4: ... b: a combination of related elements to be accepted or rejected as a whole ... c: a combination of benefits ... d: a combination of necessaries (as food or tickets) and services usu. offered at a special rate < the sports~includes accommodations in heated cabins, with or without bath and meals; two sessions at the ski school and unlimited use of the ski lifts ... > <~vacation> ....

*Id.* at 1617–18. According to Sony Music, these denotations of "repackaging" clearly and unambiguously encompass "all acts of DADC in bundling the Artwork, compact disc, jewel case and related items into a 'package' for shipment." Br. at 6. The Court cannot agree.

Whatever allure Sony Music's argument might have when section 6–1.1–10–29.3 is considered in isolation quickly fades when the section is read in the context of the other interstate commerce exemptions. Section 29.3 stands as an alternative exemption for taxpayers unable to qualify for the "original package" exemptions provided in sections 6–1.1–10–29(b)[1] and 6–1.1–10–30(a), (b), and (c).[2] Although there are important differ-

---

**1.** Section 29(b) states:

(b) Personal property owned by a manufacturer or processor is exempt from property taxation if the owner is able to show by adequate records that the property is stored and remains in its original package in an in-state warehouse for the purpose of shipment, without further processing, to an out-of-state destination.

Ind.Code Ann. § 6–1.1–10–29(b) (West Supp. 1993).

**2.** Section 30 provides:

(a) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from taxation if:

(1) the property is owned by a nonresident of this state;

(2) the owner is able to show by adequate records that the property has been shipped into this state and placed in its original package in a public or private warehouse for the purpose of transshipment to an out-of-state destination; and

(3) the property remains in its original package and in the public or private warehouse. For purposes of this subsection, a nonresident is a taxpayer who places goods in the original package and into the stream of commerce from outside of the state of Indiana.

(b) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property has been placed in its original package in a public or private warehouse for the purpose of shipment to an out-of-state destination;

(2) the property remains in the original package and in the public or private warehouse; and

(3) the property had been ordered and is ready for shipment in interstate commerce to a specific known destination to which the property is subsequently shipped.

If a property tax exemption is claimed under this subsection for property which is not shipped to a specific known destination as required under subdivision (3), the taxpayer shall file an amended personal property tax return for the year for which the exemption for that property was claimed.

(c) Subject to the limitation contained in subsection (d) of this section, personal property is exempt from property taxation if:

(1) the property has been placed in its original package in a public warehouse;

ences among sections 29(b), 30(a), 30(b), and 30(c), they share the common requirement that the goods in question be stored in their original packages for the purpose of shipment or transshipment out of state. "Original package" refers to the container in which the goods are shipped to or placed in the storage facility. The regulations define "original package" as "the box, case, bale, skid, bundle, parcel, or aggregation thereof bound together and used by the seller, manufacturer, or packer for shipment." Ind.Admin.Code tit. 50, § 4.2–12–5(d) (1992). The emphasis in these provisions is on the fact that the taxpayer has maintained the integrity of the original shipping boxes or cartons.

Section 29.3 stands for the proposition, however, that all is not necessarily lost if the taxpayer opens the "original packages" and transfers the goods to other containers. Where the goods are shipped into Indiana, the taxpayer may still enjoy an exemption for its property if it does no more than "repackage" the goods for transshipment out of state.[3] Against the background of the "original package" exemptions, the term "repackage" clearly refers, not to repackaging in the sense of combining different parts or components of a product for sale, but to repackaging in the sense of transferring to a different container for the purpose of transshipment.

This is the meaning given in Webster's second definition of the verb "package": "to enclose in a package or protective covering ... to put (a commodity) into a protective wrapper or container for shipment or storage." Webster's Dictionary, *supra*, at 1618. This is the meaning intended by the legislature.

This reading of the statute finds support in case law as well. In *Monarch Steel,* this Court explained that securing an interstate commerce exemption most often hinges on the distinction between "manufacturing or processing" on the one hand and "packaging" or "repackaging" on the other. 611 N.E.2d at 713–14. In that case, the taxpayer was engaged in the business of buying and selling large quantities of steel and was claiming an interstate commerce exemption for its inventory. *Id.* at 710. In some instances, Monarch made no changes to the steel before shipping it out of state; in some cases, it cut the steel into smaller pieces to facilitate shipment; and at still other times, it cut the steel on a template to specific customer specifications. *Id.* This Court held that "the question turns on whether Monarch cuts a piece of steel to prepare a product to sell to a customer, or to prepare an already complet-

---

(2) the property was transported to that public warehouse by a common, contract, or private carrier;

(3) the owner is able to show by adequate records that the property is held in the public warehouse for purposes of transshipment to an out-of-state destination and is labeled to show that purpose; and

(4) the property remains in its original package and in the public warehouse.

However, no personal property is exempt from property taxation under this subsection if the property is owned by the same person who owns or leases the public warehouse where the property is held.

(d) An exemption provided by this section applies only to the extent that the property is exempt from taxation under the commerce clause of the Constitution of the United States. Ind.Code Ann. § 6–1.1–10–30 (West 1989).

3. Where the goods are manufactured in Indiana, rather than being manufactured out of state and shipped here, section 29(c) provides a similar alternative. That section provides:

(c) Personal property that is manufactured in Indiana and that would be exempt under sub-

section (b), except that it is not stored in its original package, is exempt from property taxation if the owner can establish in accordance with exempt inventory procedures, regulations, and rules of the state board of tax commissioners that the property:

(1) is ready for shipment without additional manufacturing or processing, except for packaging; and

(2) will be damaged or have its value impaired if it is stored in its original package. Ind.Code Ann. § 6–1.1–10–29(c) (West Supp. 1993). Section 29(c) adds the additional requirement that the taxpayer provide a specific justification for changing containers. *See Colwell v. State Bd. of Tax Comm'rs,* No. 02T10–9511–TA–00124, slip op. at 11, —— N.E.2d ——, —— (Ind. Tax Ct. May 22, 1997) (holding that subsection 29(c)(2) "requires a showing that the goods themselves would be damaged or impaired in a physical way by storing them in their original packages"). This requirement was probably added for in-state manufactures because the legislature could not simply assume, as it could for goods to be transshipped, that the reason for the change in containers was to facilitate the change in the mode of transportation.

ed product for shipment or storage." *Id.* at 714. The Court explained:

> Under the interstate commerce exemptions, processing is concerned with the alteration of an article's state or form. Packaging, on the other hand, is concerned with transit and storage. Processing, then, refers to the preparation of a final saleable product, while packaging presumes a final saleable product already exists, and all that remains is to prepare it for shipping or storage.

*Id.* (citations omitted).[4] On the facts presented, the Court held that Monarch "processed" the steel when it cut the steel "to satisfy a customer's order, that is, to create a final saleable product," but that Monarch "packaged" the steel when it cut the steel "simply and solely to facilitate shipment or storage." *Id.*

Applying this standard to the facts in this case, DADC clearly did more than repackage the compact discs and artwork for the purposes of transshipment. DADC's chief financial officer, Wallace R. Page, gave the following description of the assembly process:

> Basically what happens is the jewel case comes in, and it's two pieces; it comes in without a tray in it. So we have automation which we load the jewel cases in. We have another slot for the back liners; we have a slot for the booklets, or the front liner, whatever's required. And then we have what we call the assembly machine there, and it will pick off a jewel case, it will insert a back liner, place the tray on top of the back liner, insert the booklet, place a disk onto the tray, close the jewel case up. It is then complete, and it goes down the line to the shrink-wrap machine. It goes through the shrink-wrap machine into the cartoning machine.
>
> That's for one that doesn't have a longbox. If it goes into a longbox it would go over,

without shrink-wrap at that point, it would go to a machine which inserts the jewel case into the longbox, and then the longbox and jewel case goes down the production line there and it seals it up, glues the edges. And then it goes to the shrink-wrap machine.

Tr. I at 39–40. The Court finds that these activities were designed, not to facilitate transshipment, but to bring together the separate components of Sony Music's final saleable product, a shrink-wrapped or boxed compact disc, complete with promotional booklet and liners. As Mr. Wallace admitted on cross-examination, the compact disc ensemble described above is "standard" retail packaging in the audio industry. Tr. I at 45.

Sony Music contends, however, that its activities should be considered "repackaging" because DADC in no way altered or changed the state or form of the artwork itself. The evidence supports Sony Music's contention in this regard. In fact, the State Board's hearing officer, Everett Davis, readily conceded that the design and production of the artwork occurs out of state. He testified that the booklets, liners, and longboxes were not themselves "changed" during the assembly process. Tr. I at 64–65. The operations consist only of folding and inserting the booklets and liners in jewel cases and, in many instances, folding and gluing the longboxes around the cases. *Id.*

Sony Music's argument misses the mark, however, because it denies the obvious relationship between the artwork and the final product of which it is a part. Sony Music would have this Court consider the booklets, liners, and longboxes as goods in and of themselves, distinct and separate from the compact discs that Sony Music markets to its customers. This Court has made clear, however, that its analysis of the interstate com-

---

**4.** The Court derived its definition of "processing" in part from the Indiana Code provision defining "manufacturer" and "processor" and in part from Webster's dictionary. The Indiana Code defines a "'manufacturer' or 'processor'" for the purpose of the interstate commerce exemptions as "a person that performs an operation or continuous series of operations on raw materials, goods, or other personal property to alter the raw materials, goods, or other personal property into a new or changed state or form." Ind.Code Ann. § 6–1.1–10–29(a) (West Supp.1993). The Code states too that "[t]he operation may be performed by hand, machinery, or a chemical process directed or controlled by an individual." *Id.; see also* Ind.Admin.Code tit. 50, § 4.2–12–5(c) (1996). Webster's defines "processing" in part as "to prepare for market, manufacture, or other commercial use by subjecting to some process." Webster's Dictionary, *supra*, at 1808.

merce exemptions demands a realistic and fact sensitive evaluation of the nature of the taxpayer's business. *See Monarch Steel,* 611 N.E.2d at 714. The Court cannot ignore the fact that Sony Music's purpose through these arrangements is to produce a final saleable compact disc, packaged for market in a shrink-wrapped jewel case or longbox and including booklets and liners.

One further point requires attention before concluding this matter. In its post-trial brief, Sony Music contends that its reading of the statute is supported by this Court's decision in *Faris Mailing, Inc. v. Department of State Revenue,* 512 N.E.2d 480 (Ind. Tax Ct.1987). In *Faris Mailing,* the taxpayer was engaged in the business of preparing and packaging mailings for its customers. *Id.* at 481, 483. The taxpayer wanted, *inter alia,* industrial exemptions from Indiana's sales and use tax. This Court denied the claim because the taxpayer failed to show that it produced a new tangible piece of personal property as required by the statute.[5] *Id.* at 483. The Court explained that there was simply no evidence that the taxpayer provided "anything more than a service." *Id.* Sony Music contends that DADC's activities are no more manufacturing or processing for the purposes of the interstate commerce exemption than the taxpayer's activities in *Faris Mailing* were under the industrial exemptions. The Court is not persuaded.

The analysis and holding in *Faris Mailing* is of little aid here because the Court was not asked in that case to determine whether the taxpayer was packaging its customers' goods for the purposes of shipment or for reasons related to their ultimate sale. This is hardly surprising. While the distinction between packaging for shipment and packaging for sale is central to the analysis under the interstate commerce exemptions of the property tax, *see Monarch Steel,* 611 N.E.2d at 714, the focus under the industrial exemptions of the sales and use tax is on whether the taxpayer produces some form of tangible personal property or merely provides a service, *compare Mid-America Energy Resources, Inc. v. Department of State Revenue,* 681 N.E.2d 259 (Ind. Tax Ct. 1997) (allowing exemption because chilling and treating water for purpose of conditioning air in customers' buildings constituted production of "other tangible personal property") *with Mechanics Laundry & Supply, Inc. v. Department of State Revenue,* 650 N.E.2d 1223, 1229–32 (Ind. Tax Ct.1995) (denying exemption because laundering soiled textiles was service, not production of "goods or items of tangible personal property"). Therefore, in *Faris Mailing,* the Court properly characterized the question presented as "whether the Petitioner is a service business or manufacturer." 512 N.E.2d at 482. The issue thus framed, the taxpayer did not attempt to show that its packaging efforts were directed at producing a final saleable product for its customers and not merely for shipping purposes. As a result, this Court declines Sony Music's invitation to read the holding in *Faris Mailing* any more broadly than the facts and legal issues in that case warrant.

5. The Indiana sales tax is subject to three so-called "industrial exemptions." *See Harlan Sprague Dawley, Inc. v. Department of State Revenue,* 605 N.E.2d 1222, 1224 (Ind. Tax Ct.1992). The taxpayer in *Faris Mailing* claimed exemptions under two of these: Ind.Code Ann. § 6–2.5–5–5.1 (West 1989) (the consumption exemption) and Ind.Code Ann. § 6–2.5–5–6 (West 1989) (the incorporation exemption). 512 N.E.2d at 482–83. The consumption exemption provides:
> Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for his direct consumption as a material to be consumed in the direct production of *other tangible personal property* in his business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture.

Ind.Code Ann. § 6–2.5–5–5.1(b) (West 1989) (emphasis added). The incorporation exemption states:
> Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for incorporation as a material part of *other tangible personal property* which the purchaser manufactures, assembles, refines, or processes for sale in his business.

Ind.Code Ann. § 6–2.5–5–6 (West 1989) (emphasis added). Under either provision, the taxpayer must show that it is producing "other tangible personal property."

## CONCLUSION

Based on the foregoing, the Court finds that DADC does more than prepare Petitioner's compact discs and artwork for transshipment. DADC assembles the goods for sale to Sony Music's ultimate customers. Because this constitutes "processing" and not merely "repackaging" under the Ind.Code Ann. § 6–1.1–10–29.3, Sony Music is not entitled to an interstate commerce exemption from the property tax.